UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BULLION SHARK, LLC,

                           Plaintiff,

        -against-

FLIP A COIN BULLION LLC, MATTHEW
FORMAN, CHRISTINA CAPPELLO, JACOB
FORMAN and JOSEPH FORMAN,

                          Defendants.
----------------------------------------------------------------X

**Case No.: 23-cv-6529**

<u>**COMPLAINT**</u>

Plaintiff Bullion Shark, LLC ("Bullion Shark" or "Plaintiff"), by its attorneys Milman Labuda Law Group PLLC, as and for its Complaint against Defendants Flip a Coin Bullion LLC ("Flip a Coin" or the "Corporate Defendant"), Matthew Forman ("Matthew"), Christina Cappello ("Cappello"), Jacob Forman ("Jacob") and Joseph Forman ("Joseph") (Matthew, Cappello, Jacob and Joseph collectively hereinafter the "Individual Defendants") (the Corporate Defendant and the Individual Defendants collectively hereinafter the "Defendants"), hereby alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      This is an action for damages and injunctive relief related to Defendants' intentional diversion of Plaintiff's employees and customers through improper conduct and the misappropriation of Plaintiff's confidential information and trade secrets resulting in Defendants': (i) violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (ii) Computer Fraud & Abuse Act, 18 U.S.C. § 1030 ("CFAA"), (iii) misappropriation of trade secrets under New York common law; (iv) unfair competition under New York common law; (v) tortious interference with contractual relations, business relations, and prospective economic advantage; (vi) unjust enrichment; (vii) breach of contract; (viii) conversion; (ix) violation of the faithless

servant doctrine; (x) breach of duty of loyalty; and (xi) breach of fiduciary duty.

2.      Defendants' diabolical scheme to leech off of Plaintiff's business causing Plaintiff's decimation must be stopped.

3.      In addition, Defendants must pay for damages for the harm they have caused to Plaintiff's business.

## PARTIES

4.      Plaintiff Bullion Shark was at all times relevant and remains a limited liability company duly incorporated under the laws of the State of New York with its principal place of business in Nassau County, New York.

5.      Defendant Flip a Coin was at all times relevant and remains a limited liability company duly incorporated under the laws of the State of Florida with its principal place of business in Hillsborough County, Florida.

6.      Defendant Matthew was formerly employed by Bullion Shark, who, upon information and belief, resides in Nassau County, New York.

7.      Defendant Cappello was formerly employed by Bullion Shark, who, upon information and belief, resides in Suffolk County, New York.

8.      Defendant Jacob was formerly employed by Bullion Shark, who, upon information and belief, resides in Pike County, Pennsylvania.

9.      Upon information and belief, Joseph resides in Hillsborough County, Florida.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 given that Plaintiff pursues claims under the DTSA, a federal law.

11.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over

Plaintiff's state law claims against Defendants because they are part of the same case or controversy and arise under a common nucleus of operative facts.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and a majority of the Defendants reside in this district.

## FACTS

13.     Bullion Shark was duly incorporated in May 2014; since its incorporation, Bullion Shark has operated in the highly competitive field of collectible trading, including rare coins and precious metals, and provides its customers with the ability to purchase rare coins and precious metals, in addition to other collectibles.

14.     Bullion Shark was formed by Nicholas Adamo ("Mr. Adamo").

15.     Prior to forming Bullion Shark, Mr. Adamo was an avid collector of all collectibles, including but not limited to rare and precious coins and metals.

16.     Based upon his fondness of collectibles, Mr. Adamo decided to form Bullion Shark to help facilitate others enjoyment of collectibles and as a way for Mr. Adamo to help fund his way through school.

17.     Following his graduation from school, Mr. Adamo decided to pursue growing Bullion Shark further, eventually growing from a small business that had a few employees to one that employs, on average, fifteen (15) employees.

18.     Mr. Adamo grew Bullion Shark, in part, through his relationships that he built with his customers.

19.     Bullion Shark conducts business with people and entities outside of the State of New York, in virtually every state of the United States of America.

20.     Among other things, Bullion Shark distinguishes itself from the competition by the relationships it has built and the accompanying services it provides to its customers.

21.     For example, Bullion Shark maintains a customer database and a customer leads database, which it takes pains to protect and keep secret, in order to track customer purchases and preferences.

22.     Matthew was employed by Bullion Shark as a salesperson beginning on or about January 11, 2022.

23.     As a salesperson who interacted with customers, he owed Bullion Shark a duty of loyalty and was entrusted with the confidential trade secrets of Bullion Shark.

24.     In fact, in January 2022, Matthew executed an agreement with Plaintiff memorializing this basic tenet wherein he agreed (i) to use his best efforts to maintain the confidentiality of all confidential information he acquired because of his employment and similarly agreed not to directly or indirectly use, divulge, furnish or make accessible to anyone other than Bullion Shark or its affiliates or subsidiaries, any confidential information; (ii) not to remove any books, reports, letters, memorandum or documents whatsoever, or copies thereof which reflect or deal with any of Bullion Shark's confidential and trade secret information after his employment; (iii) not to solicit any customer of Bullion Shark to do business with any entity in the same type of business or to withdraw, curtail or cancel its business relationship with Bullion Shark both during his employment and for a period of two years thereafter; (iv) not to solicit any of supplier of Bullion Shark to withdraw, curtail or cancel its business relationship with Bullion Shark both during his employment and for a period of two years thereafter; (v) not to induce or attempt to influence any employee, agent, independent contractor or sales representative of Bullion Shark to terminate his, her or its employment or business relationship with Bullion Shark

both during his employment and for a period of two years thereafter; and (vi) to devote his full time and attention to the performance of his duties (the "Matthew Agreement").

25.     Cappello was employed by Bullion Shark as an administrative assistant beginning on or about February 28, 2022.

26.     As an administrative assistant who interacted with customers and helped facility shipping products to customers, she owed Bullion Shark a duty of loyalty and was entrusted with the confidential trade secrets of Bullion Shark.

27.     In February 2022, Cappello executed an agreement with Plaintiff wherein she agreed (i) to use his best efforts to maintain the confidentiality of all confidential information he acquired because of his employment and similarly agreed not to directly or indirectly use, divulge, furnish or make accessible to anyone other than Bullion Shark or its affiliates or subsidiaries, any confidential information; (ii) not to remove any books, reports, letters, memorandum or documents whatsoever, or copies thereof which reflect or deal with any of Bullion Shark's confidential and trade secret information after her employment; (iii) not to solicit any customer of Bullion Shark to do business with any entity in the same type of business or to withdraw, curtail or cancel its business relationship with Bullion Shark both during her employment and for a period of two years thereafter; (iv) not to solicit any of supplier of Bullion Shark to withdraw, curtail or cancel its business relationship with Bullion Shark both during her employment and for a period of two years thereafter; (v) not to induce or attempt to influence any employee, agent, independent contractor or sales representative of Bullion Shark to terminate his, her or its employment or business relationship with Bullion Shark both during her employment and for a period of two years thereafter; and (vi) to devote her full time and attention to the performance of his duties (the "Cappello Agreement").

28.     Jacob was employed by Bullion Shark as a Lead Generator beginning on or about July 5, 2022 and was thus a key employee.

29.     As a Lead Generator who interacted with customers and helped generate leads for Bullion Shark's salespersons, he owed Bullion Shark a duty of loyalty and was entrusted with the confidential trade secrets of Bullion Shark.

30.     In July 2022, Jacob executed an agreement with Plaintiff wherein he agreed (i) to use his best efforts to maintain the confidentiality of all confidential information he acquired because of his employment and similarly agreed not to directly or indirectly use, divulge, furnish or make accessible to anyone other than Bullion Shark or its affiliates or subsidiaries, any confidential information; (ii) not to remove any books, reports, letters, memorandum or documents whatsoever, or copies thereof which reflect or deal with any of Bullion Shark's confidential and trade secret information after his employment; (iii) not to solicit any customer of Bullion Shark to do business with any entity in the same type of business or to withdraw, curtail or cancel its business relationship with Bullion Shark both during his employment and for a period of two years thereafter; (iv) not to solicit any of supplier of Bullion Shark to withdraw, curtail or cancel its business relationship with Bullion Shark both during his employment and for a period of two years thereafter; (v) not to induce or attempt to influence any employee, agent, independent contractor or sales representative of Bullion Shark to terminate his, her or its employment or business relationship with Bullion Shark both during his employment and for a period of two years thereafter; and (vi) to devote his full time and attention to the performance of his duties (the "Jacob Agreement")

31.     Under each of the foregoing agreements, confidential information was defined to include, *inter alia*, the list of Bullion Shark's suppliers and customers, customer sales histories

and Bullion Shark's pricing and cost data, Bullion Shark's analytical business date and business strategies and operations, which may be included in any books, reports, letters, memoranda or any other document that may contain the confidential information.

32.     In August 2023, Matthew and Cappello resigned from their employment with Bullion Shark without notice.

33.     Jacob resigned from his employment with Bullion Shark on or about the end of August, 2022.

34.     Upon information and belief, on August 11, 2023, Matthew, Jacob and Joseph formed Flip a Coin as a Florida Limited Liability company in the State of Florida.

35.     In the course of conducting its business, Bullion Shark was made aware that Defendants were soliciting Bullion Shark's customers immediately after Matthew provided his resignation to Bullion Shark.

36.     At least two customers have notified Plaintiff that he was solicited by Defendants to purchase rare and precious metals from Defendants.

37.     Defendants engaged in this conduct to deprive Bullion Shark of the contractually agreed-upon benefit it expected to receive from its customers and to line their own pockets.

38.     Crucially, Matthew and Cappello were required to, but failed, to provide two (2) weeks' notice; this was because the Defendants misappropriated Plaintiff's confidential and proprietary information and sought to utilize it right away to unlawfully form a competing business with the information they improperly stole.

39.     Indeed, upon investigation, Bullion Shark learned that Cappello was accessing Bullion Shark employee email accounts after she had resigned from her employment with Bullion Shark and after Flip a Coin was formed.

40.     Upon information and belief, Cappello was accessing the other Bullion Shark employee email accounts in order to continue to access Bullion Shark's confidential information, which was improper given that Cappello no longer worked for Plaintiff.

41.     Upon information and belief, Matthew, Cappello, and Jacob had engaged in such conduct from the beginning of their employment and with other customers of Bullion Shark.

42.     Defendants' conduct constitutes disloyal acts in violation of their duty of loyalty to Bullion Shark, a violation of the DTSA, CFAA, and related state law common claims for misappropriation of trade secrets and unfair competition, as well as a breach of their obligations under their respective agreements.

43.     Their conduct is improper as a breach of these agreements and violates the law.

44.     Plaintiff's business model, its customer lists, contact information and preferences, information related to its revenues and profit margins, and the related information Matthew, Cappello, and Jacob obtained during their employment with Plaintiff are confidential and proprietary, and took great costs and efforts to create, including years of developing relationships with customers long before Matthew, Cappello and Jacob entered the fray in the rare and precious coin and metal market.

45.     Plaintiff went through painstaking efforts, time, and money to build its business to what it is today.

46.     Plaintiff has spent the nearly a decade marketing its services and cultivating relationships with its customers and contacts in the industry, many of whom were customers of Bullion Shark from its inception.  Moreover, Matthew, Cappello, and Jacob learned of Plaintiff's customer's preferences while employed at Bullion Shark.

47.     Plaintiff's carefully curated customer preferences and customer relations are vital

to its business; possession of that information, which Matthew, Cappello and Jacob misappropriated in contravention of their respective agreements, provided Plaintiff a unique competitive advantage in the rare and precious coin and metal industry, a competitive advantage it has been stripped of by Matthew's, Cappello's and Jacob's unlawful acts.

48.     Plaintiff took reasonable measures to keep its confidential information secret, including restricting access of this information only to those employees who could utilize the confidential information to advance Plaintiff's business.

49.     The confidential information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means from others who could otherwise obtain economic value from the disclosure or use of the information.

50.     This confidential information is related to services used in and intended for use in interstate or foreign commerce because Plaintiff sells rare and precious coins and metals to customers who reside outside of the State of New York, including but not limited to virtually all fifty (50) states, in the regular course of its business.

51.     The Individual Defendants were in positions of trust at Bullion Shark and were required, under common law, and as employees with contractual obligations, to provide their utmost duty of loyalty to their employer, Bullion Shark.

52.     The Individual Defendants' acts, outlined *supra*, are in violation of their duty of loyalty, their fiduciary duty, and Defendants' actions constitute, among other things, theft of trade secrets and unfair competition.

53.     Moreover, Defendants knew and had reason to know that the trade secrets and confidential information they obtained – including customer lists, financial information, and details about customers – were acquired by improper means.

54.     This is evidenced by Defendants' conduct immediately reaching out to Bullion Shark clients and customers upon his separation of employment with Bullion Shark to solicit their business.

55.     Defendants' immediate contact with Bullion Shark customers and clients to solicit business was done in order to line their own pockets and deprive Plaintiff of its contractually agreed-upon benefit with its customers.

56.     The unauthorized acts of Individual Defendants in using critical confidential information to jumpstart his own competitor entity is unlawful.

57.     There was no other way to obtain this information and Defendants used it as a "roadmap" and "step by step manual" to establish their operations to improperly compete with Plaintiff.

58.     Plaintiff's trade secrets and confidential information that Matthew, Cappello and Jacob misappropriated provided Defendants with the ability to duplicate operational, service, and development techniques that Bullion Shark has spent years, decades even, establishing; meanwhile, Defendants gained access to information that they would have no other way of obtaining.

59.     Defendants misappropriated such confidential and trade secret information by engaging in theft; no permission was given to Matthew, Cappello or Jacob to utilize Plaintiff's customer lists, customer preferences, financial information, and details about Bullion Shark's customers for any purpose except for the benefit of Bullion Shark.

60.     It is obvious from Defendants' brazen tactics that they are actively engaged in a scheme to plunder and destroy Bullion Shark.

61.     Upon information and belief, a significant number of Plaintiff's customers have

been solicited by Defendants using Plaintiff's trade secrets and confidential information.

62.     Immediate injunctive relief and a permanent injunction is necessary to prevent Defendants from destroying the customer relationships and goodwill that Bullion Shark has spent years building, from profiting on a business which they stole from Bullion Shark, and causing further imminent and irreparable financial harm to Bullion Shark.

63.     In addition to securing the return of its misappropriated information to it by Defendants and enjoining them from engaging in any further unlawful conduct, it is essential that Bullion Shark be permitted to forensically examine the Defendants' email accounts, computers, cellular phones, and any other electronic devices or cloud storage accounts, to determine the exact nature and extent of Defendants' unlawful scheme to steal Bullion Shark's customers.

## AS AND FOR ITS FIRST CAUSE OF ACTION
### (Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 – All Defendants)

64.     Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

65.     Defendants' actions, as set forth herein, constitute misappropriation under the DTSA, 18 U.S.C. § 1836.

66.     Defendants possess trade secrets and confidential information belonging to Plaintiff, including the identity of all of its customers, contact information, and all details related to customers, including *inter alia*, their preferences and pricing, profit margins, in addition to private and confidential financial information, as well as Plaintiff's forms and contracts.

67.     Bullion Shark made and makes reasonable efforts to maintain the secrecy of this information, which Matthew, Cappello and Jacob expressly acknowledged in their employment agreements

68.     The trade secret information belonging to Plaintiff that Defendants possess

derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

69.     Indeed, Defendants utilized this very information as a road map to open a competing business and unfairly competed against Bullion Shark in dastardly fashion.

70.     Defendants knew that this information contained trade secrets belonging to Bullion Shark.

71.     Defendants have no right to retain or use any of Bullion Shark's trade secrets or other confidential and proprietary information due to their illegal conduct.

72.     Upon information and belief, Defendants are retaining and using that information to compete with Bullion Shark; Bullion Shark did not consent to Defendants' use of the information as set forth above.

73.     At all relevant times, Defendants knew that the information obtained by them contained Plaintiff's proprietary trade secrets that they had no right to receive and could not receive absent the improper acts of Matthew, Cappello and Jacob.  Defendants' conduct thus constitutes knowing, willful, and  malicious misappropriation.

74.     Defendants have used Plaintiff's trade secrets to sell, through interstate commerce, services that compete with the services that Plaintiff markets, causing substantial loss of sales to Plaintiff and damage to its relationships with its clients.

75.     Defendants have wrongfully acquired and used Plaintiff's trade secrets and continue to do so, without the express or implied consent of Plaintiff, for Defendants' own benefit and the benefit of others.

76.     Upon information and belief, Joseph knew of the Matthew Agreement, Cappello

Agreement and Jacob Agreement and knew of the conduct engaged in by Matthew, Cappello and Jacob. Notwithstanding, Joseph substantially assisted and was complicit in Matthew's, Cappello's and Jacob's unlawful conduct.

77.     The public policy in favor of protecting Plaintiff's interest in maintaining its trade secrets outweighs any interest Defendants could have in using Plaintiff's trade secrets.

78.     As a direct and proximate result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and continues to suffer immediate and irreparable injury, loss, harm or damage including, without limitation, the misappropriation of its trade secrets and loss of its brand recognition and goodwill with its clients, and will continue to suffer said injury, loss, harm or damage unless and until Defendants are restrained from their continued misappropriation of trade secrets.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Injunctive Relief under the DTSA (18 U.S.C. § 1836, *et seq.* – All Defendants)**

79.     Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

80.     Bullion Shark operates its business in interstate commerce in all fifty (50) states, and the trade secrets misappropriated by Defendants are related to, and intended for use in, interstate commerce.

81.     As set forth above, Defendants improperly acquired Plaintiff's trade secrets, including information regarding Plaintiff's business, operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing strategies, and other confidential business and/or financial information that was secret, valuable in the industry, and had not been disclosed to anyone except managers who contractually agreed to keep this information confidential.

82.     The aforementioned information qualifies as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839(3).

83.     The misappropriated documents concern Plaintiff's operations, services, clients (including annual revenue from particular clients, and client preferences), pricing, sales and marketing strategies, including financial, business, and economic information, plans, methods, techniques, procedures, formulas and processes.

84.     Furthermore, Plaintiff has taken reasonable measures to keep such information secret by, among other things, limiting those employees with access to the confidential information and requiring employees who have access to the confidential information to sign agreements protecting the disclosure of the confidential information.

85.     The trade secrets misappropriated by Defendants include the trade secrets which required substantial resources, time and investment by Plaintiff to create and/or develop, and derive independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as Plaintiff's competitors.

86.     Defendants' misappropriation of Plaintiff's trade secrets has caused it to suffer harm, including but not limited to the loss of clients, loss of reputation and customer goodwill, and loss of the confidentiality of, and investment in, its trade secrets.

87.     This harm cannot be adequately remedied at law and requires permanent injunctive relief.  Plaintiff will suffer irreparable and imminent harm in the absence of a permanent injunction; Defendants' continued misappropriation of Plaintiff's trade secrets and failure to return Plaintiff's documents containing Trade Secrets, including Plaintiff's top revenue clients will cause Plaintiff further loss of clients, customers, accounts and/or market share.

88.     This imminent injury is neither remote nor speculative, because Plaintiff has already been harmed in precisely this manner by Defendants' misappropriation and use thereof, and will continue to be irreparably harmed in the absence of a permanent injunction.

89.     Defendants will not suffer harm from the rightful return of Plaintiff's proprietary information and trade secrets, and will not be prevented from conducting their ordinary business by lawful means.

90.     Defendants will merely be prevented from continuing to gain an unfair and unlawful advantage at Plaintiff's expense.  The ongoing, continuing and future harm to Plaintiff cannot be adequately remedied at law and requires permanent injunctive relief.

91.     The public interest would not be disserved by the issuance of an injunction preventing Defendants from misappropriating Plaintiff's Trade Secrets.

92.     Accordingly, Plaintiff is entitled to an injunction, pursuant to 18 U.S.C. 1836(b)(3)(A), enjoining Defendants from continuing to use Plaintiff's trade secrets, in order to prevent continued actual and threatened misappropriation of Plaintiff's trade secrets, and requiring Defendants to return and/or destroy the trade secrets improperly accessed and retained by Defendants, pursuant to 18 U.S.C. 1836(b)(3)(A)(ii).

## AS AND FOR A THIRD CAUSE OF ACTION
### (Computer Fraud & Abuse Act – Matthew, Cappello and Jacob)

93.     Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

94.     Plaintiff's computer systems were at all relevant times used in interstate commerce and communication and are thus "protected computers" under 18 U.S.C. § 1030(e)(2).

95.     Upon information and belief, in violation of 18 U.S.C. § 1030(a)(4), Defendants have deliberately and without authorization accessed Plaintiff's computers for the purpose of

misappropriating its trade secrets.

96. The access of Plaintiff's computers was unauthorized. Indeed, Bullion Shark's former key employee, Cappello, after she was separated from her employment with Plaintiff accessed Plaintiff's email accounts, and has provided Defendants with access to the Plaintiff's email accounts without authority and has otherwise exceeded the scope of authorized use of such computer and software in violation of 18 U.S.C. § 1030(a)(4).

97. Upon information and belief, Defendants knowingly caused the transmission of a program, information, code or command, and as a result of such conduct, recklessly and intentionally caused damage without authorization, and/or intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage and loss, in violation of 18 U.S.C. §§ 1030(a)(5)(A)-(C).

98. By reason of the foregoing, Plaintiff was damaged in an amount to be proved at trial, but well in excess of the statutorily required minimum in any one (1) year period.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Misappropriation – All Defendants)

99. Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

100. Defendants' actions, as set forth herein, constitutes misappropriation under New York law.

101. Defendants currently possess information belonging to and used in the operation of Bullion Shark's business, which information constitutes confidential, proprietary and trade secret information under New York law.

102. Such information was developed by Bullion Shark through great effort and expense, in terms of manpower, time, and costs, and is extremely valuable to Bullion Shark, as it

is crucial to the operation of its business, cannot be easily acquired or duplicated by others, and, if made available to others, would enable competition with Bullion Shark to its detriment.

103. Bullion Shark makes reasonable efforts to maintain the secrecy of this information including limiting its disclosure.

104. Upon information and belief, Defendants knowingly and improperly obtained and used such trade secrets and confidential information for their own benefit, violating their agreements.

105. The improperly retained information constitute trade secrets and Defendants' actions pose a real and actualized risk that they will and have misappropriated these secrets by using the information to their advantage or for their own personal economic gain and with the willful and malicious intent to injure Bullion Shark's business.

106. As a result, Bullion Shark has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs and punitive damages in anamount to be proven at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unfair Competition – All Defendants)

107. Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

108. Through Defendants' misappropriation of Plaintiff's confidential trade secrets, Defendants have stolen customers from Bullion Shark.

109. As a result of Defendants' use of the trade secrets they bribed employees to obtain a competitive advantage against Plaintiff, and as such, Defendants have caused economic damages to Bullion Shark along with diminishing its goodwill.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Tortious Interference – All Defendants)

110.    Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

111.    Plaintiff has entered into valid agreements with its clients and customers for the purchase of rare and precious coins and metals.

112.    Defendants were at all relevant times aware of these agreements between Plaintiff and its clients and customers.

113.    Defendants intentionally attempted to undermine Plaintiff by utilizing Plaintiff's pricing and cost data to induce Bullion Shark's customers to purchase rare and precious coins and metals from Flip a Coin in violation of the law.

114.    Defendants knew that it was illegal to violate the Matthew Agreement, Cappello Agreement and Jacob Agreement to solicit Plaintiff's customers; Defendants' conduct has caused Plaintiff to lose sales as well as cause injury to Plaintiff's brand and reputation with its clients.

115.    As a consequence of Defendants' acts to steal clients, customers, and employees of Bullion Shark, it has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

116.    Defendants' conduct was intentional, willful, and malicious, thus justifying the award of punitive damages and/or exemplary damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (Unjust Enrichment – All Defendants)

117.    Bullion Shark incorporates by reference each of the foregoing allegations as

though fully set forth herein.

118.    Plaintiff has invested substantial time, money, and effort into developing and maintaining its confidential information and trade secrets in promoting and selling rare and precious coins and metals, including its customer & client lists, Bullion Shark pricing and cost data, as well as Bullion Shark's customers purchase preferences.

119.    Defendants have used and continue to use Plaintiff's confidential information to compete with Plaintiff and funnel Plaintiff's business opportunities away from Plaintiff to Defendants.

120.    As a result of Defendants' use of Plaintiff's confidential information and trade secrets, Defendants have all been enriched at Plaintiff's expense by, among other things, receiving substantial revenues from sales of services that compete with Plaintiff's services without bearing the expense and risk of identifying the services and developing the clients, customers, marketing plans, and materials necessary to achieve the sales.

121.    As a consequence of Defendants' acts to steal customers of Bullion Shark, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Breach of Contract – Matthew, Cappello and Jacob)**

122.    Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

123.    Plaintiff and Matthew entered into the Matthew Agreement, which is a valid and existing agreement, in which Matthew agreed not to compete directly or indirectly with Plaintiff

for a period of two (2) years and where Matthew agreed to not solicit Plaintiff's clients, customers, or employees for two (2) years.  Plaintiff fully performed under the agreement by employing and compensating Matthew for his work as a salesperson.

124.    Plaintiff and Cappello entered into the Cappello Agreement, which is a valid and existing agreement, in which Cappello agreed not to compete directly or indirectly with Plaintiff for a period of two (2) years and where Cappello agreed to not solicit Plaintiff's clients, customers, or employees for two (2) years.  Plaintiff fully performed under the agreement by employing and compensating Cappello for her work as an administrative assistant.

125.    Plaintiff and Jacob entered into the Jacob Agreement, which is a valid and existing agreement, in which Jacob agreed not to compete directly or indirectly with Plaintiff for a period of two (2) years and where Matthew agreed to not solicit Plaintiff's clients, customers, or employees for two (2) years.  Plaintiff fully performed under the agreement by employing and compensating Jacob for his work as a Lead Generator.

126.    However, during and after his employment ended, Matthew, Cappello and Jacob, each individually and by and through Flip a Coin breached their respective agreement by operating a competing business which was formed using Plaintiff's confidential information and trade secrets and by soliciting Bullion Shark's customers to cease their relationships with Bullion Shark and soliciting Bullion Shark's employees to terminate their employment with Bullion Shark.

127.    Moreover, upon information and belief, during and after her employment ended, Cappello, breached the Cappello Agreement by accessing Bullion Shark employee email accounts to access Plaintiff's confidential information and trade secrets in order to solicit Bullion Shark's customers and to directly compete with Bullion Shark through Flip a Coin.

128.     As a result of the Defendants' combined, concerted, and continued efforts, Plaintiff was, is, and continues to be damaged for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest and punitive damages in an amount as the proof at a trial may warrant that were directly caused by Defendants' misconduct.

### AS AND FOR A NINTH CAUSE OF ACTION
**(Conversion – All Defendants)**

129.     Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

130.     Plaintiff has a possessory right and legal ownership to the confidential information and trade secrets referenced herein.

131.     Defendants exercised unauthorized dominion over Plaintiff's confidential information and trade secrets.

132.     Defendants willfully exercised unauthorized dominion over Plaintiff's confidential information and trade secrets to the detriment of Plaintiff.

133.     Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets was and is to the exclusion of Plaintiff's rights.

134.     Defendants' unauthorized dominion over Plaintiff's confidential information and trade secrets constitutes conversion.

135.     Defendants have thus committed the tort of conversion under New York common law.

### AS AND FOR A TENTH CAUSE OF ACTION
**(Breach of Fiduciary Duty – Matthew, Cappello and Jacob)**

136.     Bullion Shark incorporates by reference each of the foregoing allegations as

though fully set forth herein.

137.   Matthew, Cappello and Jacob were employed by Plaintiff in positions of trust and confidence.

138.   As a salesperson of Plaintiff, Matthew owed Plaintiff a fiduciary duty of loyalty and honesty.

139.   As an administrative assistant of Plaintiff, Cappello owed Plaintiff a fiduciary duty of loyalty and honesty.

140.   As a Lead Generator of Plaintiff, Jacob owed Plaintiff a fiduciary duty of loyalty and honesty.

141.   By virtue of these duties, Matthew, Cappello and Jacob were prohibited from acting in a disloyal manner, or in any way inconsistent with that fiduciary relationship.

142.   Matthew's, Cappello's and Jacob's aforementioned conduct of soliciting Plaintiff's customers utilizing the confidential information they learned of through employment with Bullion Shark, while they worked for Plaintiff using Plaintiff's confidential information constitutes a breach of the fiduciary duty owed to Plaintiff.

143.    As a consequence of Matthews, Cappello's and Jacob's foregoing intentional breach of their fiduciary duties to Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including – but not limited to – financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Breach of Duty of Loyalty – Matthew, Cappello and Jacob)

144.   Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

145.    Matthew, Cappello and Jacob were employed by Plaintiff in positions of trust and confidence.

146.    As an employee of Plaintiff, Matthew, Cappello and Jacob owed Plaintiff a duty of loyalty and honesty.

147.    By virtue of these duties, Matthew, Cappello and Jacob were prohibited from acting in a disloyal manner or in any way inconsistent with the employment relationship.

148.    Matthew's, Cappello's and Jacob's aforementioned conduct of soliciting Plaintiff's customers utilizing the confidential information they learned of through employment with Bullion Shark, while they worked for Plaintiff using Plaintiff's confidential information constitutes a breach of the fiduciary duty owed to Plaintiff.

149.    As a consequence of Matthew's, Cappello's and Jacob's forgoing intentional breach of their duty of loyalty to Plaintiff, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
**(Violation of Faithless Servant Doctrine – Matthew, Cappello and Jacob)**

150.    Bullion Shark incorporates by reference each of the foregoing allegations as though fully set forth herein.

151.    Matthew, Cappello and Jacob were employed by Plaintiff in positions of trust and confidence.

152.    As an employee of Plaintiff, Matthew, Cappello and Jacob owed Plaintiff a duty of loyalty, honesty, and fidelity.

153.    By virtue of these duties, Matthew, Cappello and Jacob were prohibited from acting in a disloyal manner or in any way inconsistent with that trust relationship.

154.    Pursuant to the faithless servant doctrine, Matthew, Cappello and Jacob were obligated to be loyal to Plaintiff and were prohibited from acting in a manner inconsistent with their agency or trust and was bound to exercise the utmost good faith and loyalty in the performance of their duties.

155.    Matthew's, Cappello's and Jacob's aforementioned conduct of soliciting Plaintiff's customers utilizing the confidential information they learned of through employment with Bullion Shark, while they worked for Plaintiff using Plaintiff's confidential information constitutes a breach of the fiduciary duty owed to Plaintiff.

156.    Matthew's, Cappello's and Jacob's activity were related to the performance of their duties.

157.    Matthew's, Cappello's and Jacob's disloyalty permeated their services in its most material and substantial part.

158.    As a consequence of Matthew's, Cappello's and Jacob's conduct, which constitutes a cause of action pursuant to the faithless servant doctrine, Plaintiff has been injured, for which it is entitled to recover damages including but not limited to the return of wages, bonuses and other compensation paid to Gafoor /such that they are disgorged, financial loss, loss of good will and reputation, compensatory and special damages, interest, and punitive damages in an amount as the proof at a trial may warrant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in its favor as against Defendants as follows:

a.    Compensatory damages for misappropriation of Bullion Shark's goodwill,

misappropriation and unfair competition, violation of the Defend Trade Secrets Act of 2016, 18

U.S.C. § 1836, tortious interference with contract, business relations, and prospective economic

advantage, unjust enrichment, and civil conspiracy according to proof at trial, including but not

limited to, lost profits, disgorgement of all profits and revenues received by Defendants, and – to

the extent calculable – damages for reputational damage, lost customers, lost relationships, lost

revenue, loss of goodwill, corrective advertising, and all other available damages;

  b. Injunctive relief restraining and enjoining Defendants from further violations of the

DTSA, including the use of confidential information or trade secrets of Plaintiff, and unfairly

competing with Plaintiff in any manner;

  c. Ordering that Defendants return all of Bullion Shark's confidential and proprietary

information, including a forensic examination of all of Defendants' computing devices, cellular

phones, and cloud storage sites;

  d. Permanently shuttering Flip a Coin and prohibiting the Individual Defendants or their

agents from engaging in any similar business, whether directly or indirectly;

  e. Punitive and exemplary damages in an amount to be determined at trial in this case;

  f. Interest (pre-judgment & post-judgment);

  g. Equitable relief in the form of the imposition of an injunction, constructive trust,

accounting, and a disgorgement of profits and other benefits received by reason of the unlawful

conduct complained of herein;

  h. Enjoining Defendants from operating their business by virtue of its illegal conduct;

  i. Ordering that Defendants pay the costs of suit, including attorneys' fees; and

  j. Such other and further relief as this Court deems just, equitable, and proper.

Dated: Lake Success, New York
    August 31, 2022

          Respectfully submitted,

          **MILMAN LABUDA LAW GROUP PLLC**

            *_/s Kyle F. Monaghan, Esq._*
          Emanuel Kataev, Esq.
          Kyle F. Monaghan, Esq.
          3000 Marcus Avenue, Suite 3W8
          Lake Success, NY 11042-1073
          (516) 328-8899 (office)
          (516) 328-0082 (facsimile)
          emanuel@mllaborlaw.com
          kyle@mllaborlaw.com

          *Attorneys for Plaintiff*
          *Bullion Shark, LLC*