# Exhibit "C"

# EMPLOYMENT AGREEMENT

Agreement dated 07/05/22, between Bullion Shark, LLC, a New York state limited liability company, maintaining a principal office for the transaction of business at 1 Old Country Road, Suite 106, Carle Place, NY 11514 (hereinafter called the EMPLOYER"), and _[signature: Jacob Koenig]_ (hereinafter called the "EMPLOYEE"), residing at

101 Cold Spring lane Greentown PA 18426

**WITNESSETH:**

WHEREAS, the EMPLOYEE seeks to commence employment hereunder with the EMPLOYER as a Lead Generator; and

WHEREAS, the EMPLOYER and the EMPLOYEE wish to set down in writing the terms and conditions of such employment with the EMPLOYER.

NOW, THEREFORE, in mutual consideration of the Agreement herein, the parties agree as follows:

1. <u>Employment</u>. The EMPLOYER hereby agrees to employ the EMPLOYEE as a Lead Generator, and the EMPLOYEE hereby accepts such employment upon the terms and conditions hereinafter set forth. EMPLOYEE shall begin employment hereunder as of the date set forth above.

2. <u>Term</u>. The term of this Employment Agreement ("Agreement") shall be "At Will." As an at will employee, her services may be terminated by the Employer at any time for any reason (provided it is not a reason prohibited by statute) or no reason at all. Similarly, EMPLOYEE may terminate her services to EMPLOYER for any reason or no reason at all.

EMPLOYEE, however, must give 14 days' notice before ceasing her work activities on behalf of EMPLOYER.

3. <u>Wages</u>. For all services rendered by the EMPLOYEE under this Agreement, the EMPLOYER shall pay the EMPLOYEE $15 per hour. EMPLOYEE shall be paid in accordance with the EMPLOYER'S typical payroll policies on a bi-weekly basis, provided that if the period of employment hereunder shall terminate prior to the completion of a payroll period, then the wages payable for said period shall be prorated.

4. <u>Duties</u>. The EMPLOYEE will be employed as a Lead Generator for the EMPLOYER with all customary and typical responsibilities of such a position within the industry. The EMPLOYEE will report to Nicholas Adamo and/or Andrew Adamo. The precise services of the EMPLOYEE may be extended or curtailed, from time to time, at the direction of the EMPLOYER. EMPLOYEE'S essential duties and responsibilities include, but are not limited to, the following: calling prospective clients and existing clients to generate leads for Senior Sales Representatives.

5. <u>Expenses</u>. EMPLOYEE shall be reimbursed for all items reasonably paid for by EMPLOYEE on behalf of EMPLOYER with prior approval from a supervisor. EMPLOYEE must submit receipts for all such charged items within thirty (30) days of incurring such expenses together with an itemized list of the nature, date incurred, recipient, purpose and amount of all expenses. Emergent conditions could require additional expenses to be incurred on behalf of EMPLOYER for which EMPLOYEE will be reimbursed, however, prior approval of EMPLOYEE'S supervisor must be obtained.

4835-9330-1215, v. 1

6. <u>Vacation Days.</u> The EMPLOYEE will not be entitled to paid holidays/vacation/personal days.

7. <u>Disclosure of information</u>. The EMPLOYEE recognizes and acknowledges that the list of the EMPLOYER'S suppliers and customers, customer sales histories and the EMPLOYER'S pricing and cost data (collectively referred to hereinafter as "confidential information," as they may exist from time to time (to the extent that they were not known to the EMPLOYEE prior to her employment with EMPLOYER), are valuable, special, and unique assets of the EMPLOYER'S business. The EMPLOYEE acknowledges that the EMPLOYER has made sizeable expenditures of time and money in developing this data and makes all reasonable efforts to protect their secrecy. The EMPLOYEE acknowledges that said data constitute trade secrets of the EMPLOYER and the EMPLOYEE will not during the term of his employment or thereafter, directly or indirectly, use, divulge, furnish or make accessible to anyone other than the EMPLOYER, its affiliates or subsidiaries, any confidential information, (whether existing or under development).

8. <u>Restrictive Covenant</u>. At the termination of EMPLOYEE'S employment, for whatever reason, the EMPLOYEE agrees that for two (2) years after her employment with EMPLOYER terminates, EMPLOYEE will not (a) solicit any customer of EMPLOYER to do business with any other entity. A customer of EMPLOYER is defined throughout this Employment Agreement as any entity that has availed it/him/herself of EMPLOYER'S goods or services within the twelve (12) months prior to EMPLOYEE'S separation from employment with EMPLOYER; (b) request or advise any of the past, present and/or expected customers, and/or suppliers of the EMPLOYER, to withdraw, curtail or cancel its business relationship with

the EMPLOYER; or (c) induce, or attempt to influence any employee, agent, independent contractor, or sales representative of the EMPLOYER to terminate his, her or its employment and/or working business relationship with the EMPLOYER. EMPLOYEE agrees that regardless of the above restrictions, EMPLOYEE will still be able to earn a living within this industry.

The EMPLOYEE further agrees that she shall not, after the termination of the performance of services by her on behalf of the EMPLOYER, take with her any books, reports, letters, memoranda or documents whatsoever, or copies thereof which reflect or deal with any of the foregoing confidential and trade secret information, including but not limited to any information concerning the names, addresses and telephone numbers of the EMPLOYER'S principals, customers, suppliers, employees or any part thereof to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever.

In the event of a breach or threatened breach by the EMPLOYEE of the provisions of this or the immediately preceding numbered paragraph, the EMPLOYER shall be entitled to a preliminary and a permanent injunction, enforcing said provisions. No undertaking or bond shall be required for any injunctive relief described above and EMPLOYER shall be entitled to recover the expenses it incurs in enforcing the provisions of paragraphs 7 and 8 hereof, including, but not limited to, reasonable attorney's fees.

Nothing herein shall be construed as prohibiting the EMPLOYER from pursuing any other remedies available to the EMPLOYER for such breach or threatened breach, including the recovery of damages from the EMPLOYEE.

9. <u>Resignation</u>. Should EMPLOYEE choose to resign from employment with EMPLOYER, he/she must provide a minimum of two (2) weeks' notice of said desire to EMPLOYER.

10. <u>Death Or Disability During Employment</u>. If the EMPLOYEE dies during the term of her employment or becomes unable to perform her essential duties (despite reasonable accommodation) due to mental or physical defect or disease, for one hundred twenty-one (121) consecutive days, this Agreement shall terminate. Upon such termination, the EMPLOYER shall pay to the EMPLOYEE or his/her estate the annual salary which would otherwise be payable to the EMPLOYEE up to the end of the month in which his death or disability occurs and the EMPLOYER shall have no further obligations hereunder. Notwithstanding the above, should the EMPLOYEE become unable to perform her essential duties (despite reasonable accommodation) due to mental or physical defect or disease, the parties will consult with a mutually selected physician and determine whether any reasonable duration of leave will permit EMPLOYEE to return to his duties. If not, then this Agreement shall be deemed terminated as if EMPLOYEE died.

11. <u>Notices.</u> Any and all notices provided herein shall be given in writing by first class mail, FedEx or certified mail, return receipt requested, which shall be addressed, in the case of the EMPLOYER, to the EMPLOYER'S President at the EMPLOYER'S above stated address and in the case of the EMPLOYEE, to the address stated above.

12. <u>Representation</u>. EMPLOYEE represents that she is unencumbered in entering into this Agreement and employment with EMPLOYER. EMPLOYEE represents that she is free

4835-9330-1215, v. 1

from any contractual restrictions, express or implied, with respect to any prior employer. Should this representation prove inaccurate, that shall constitute grounds for immediate termination.

13. <u>Construction</u>. Whenever used in this Agreement, the singular word shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. This Agreement shall not be interpreted in favor of, or against, either party on account of such party having drafted this Agreement. The titles and captions in this Agreement are for convenience of reference only and shall not control or affect the interpretation or construction of any of its terms or conditions.

14. <u>Applicable Law; Jurisdiction</u>. This Agreement shall be subject to and governed by the laws of the State of New York. All disputes in connection with this Agreement or the subject matter hereof shall be resolved in either the State Courts located in Nassau County, New York or the United States District Court for the Eastern District of New York, and EMPLOYER and EMPLOYEE each submit to the exclusive jurisdiction of such courts.

15. <u>Savings</u>. If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement, or the applications of such term or provisions to persons or circumstances other than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law. Similarly, either party's waiver of the other's obligation on one occasion will not waive the same obligation in the future.

16. <u>Entire Agreement</u>. This Agreement contains the Parties' entire Agreement, and there are no Agreements or representations, which are not set forth herein. All prior negotiations,

Agreements, and understandings of the parties are superseded by this Agreement. No modification of this Agreement shall be valid unless the modification is in writing and signed by both the EMPLOYEE and the EMPLOYER.

17. <u>Independent Covenants</u>. Each covenant, condition, representation and promise set forth herein is separate, distinct and independent of any other covenant, condition, representation or promise contained herein. No covenant, condition, representation or promise contained herein is, in any way, contingent upon any other covenant, condition, representation or promise contained herein.

18. <u>Waiver</u>. The decision by EMPLOYER to refrain from enforcing EMPLOYEE'S breach of any provision of this Employment Agreement, shall not prohibit EMPLOYER from subsequently enforcing that very breach. The waiver by either party of a breach of any provision of this Agreement by the other shall not operate or be construed as a waiver of any subsequent breach. In addition the failure by either party to insist upon strict compliance with any of the terms, covenants, or conditions, hereof shall not be deemed a waiver of such term, covenant, or condition, nor shall any waiver or relinquishment by either party of any right or power hereunder at any one time or more times be deemed a waiver or relinquishment of such right or power by the said party at any other time or times.

19. <u>Non-Disparagement</u>. EMPLOYEE agrees that she will not disparage EMPLOYER to anyone during her employment with EMPLOYER and for one (1) year thereafter.

20. <u>Jury Trial</u>. Each of EMPLOYER and EMPLOYEE irrevocably agrees to waive its respective rights to a jury trial of any claim or cause of action based upon or arising out of this

Agreement and any dealings between them relating to this Agreement and the relationship hereby established.

Bullion Shark, LLC

By: _____
Nicholas Adamo, Managing Member

EMPLOYEE

_____