Exhibit "D"

# MEHMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NEW YORK 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

August 17, 2023

**VIA FEDERAL EXPRESS & E-MAIL**
Matthew Forman
100 West Broadway
Apartment 6HH
Long Beach, NY 11561-4001
matthewforman65@icloud.com

**VIA FEDERAL EXPRESS**
Flip a Coin Bullion LLC
<u>Attn</u>: Matthew Forman
2426 Knight Island Dr.
Brandon, FL 33511-7239

**VIA FEDERAL EXPRESS & E-MAIL**
Christina Cappello
349 Lake Avenue
Deer Park, NY 11729-4041
christinacapp@yahoo.com

   **Re: Bullion Shark, LLC**
      **Notice to Immediately Cease & Desist Violations of Agreement**
      <u>**Demand for Return of Confidential Information & Proprietary Trade Secrets**</u>

Mr. Forman and Ms. Cappello:

  This office represents Bullion Shark, LLC (the "Company") in legal matters. We write to remind you of your continuing obligations to the Company following your resignation on August 11, 2023 pursuant to your signed Employment Agreement and to demand that you immediately cease and desist violating the terms of same. A copy of the Employment Agreement with the Company signed by Matthew Forman on January 11, 2022 and a copy of the Employment Agreement with the Company signed by Christina Cappello on February 28, 2022 is annexed hereto.

  It has come to the Company's attention that you have repeatedly and willfully violated significant aspects of the terms of the Agreement. Specifically, on August 11, 2023, the same day you resigned, you registered "Flip a Coin Bullion LLC" ("Flip a Coin") in Florida. More importantly, the Company is aware that you have been soliciting its employees and customers in violation of both your Agreement and the law. While our investigation is continuing, based on information currently available, the Company has reason to believe that you are in violation of your common law and contractual obligations to it not to solicit customers and employees, tortiously interfere with its employment and customer relationships, and to not use or disclose its confidential and proprietary information, including customer lists and employee information, among other items I need not specify here.

Based on the foregoing, we demand that you immediately cease and desist any such unlawful activities and confirm in writing by the close of business on Monday, August 21, 2023 that you have complied and will continue to comply with the following:

1. Cease and desist from using or disclosing the Company's trade secrets and confidential and proprietary information.

2. Immediately return all trade secrets and confidential or proprietary information belonging to the Company, including, but not limited to, customer lists, customer information, financial information, and any other information obtained during your employment with the Company.

3. Cease and desist from all activities that violate the law concerning unfair competition and misappropriation of trade secrets.

4. Cease and desist from tortiously interfering with the Company's business relations with its customers, its employees (i.e., Ms. Christina Cappello), and its vendors.

5. Cease and desist from making defamatory statements about the Company and its principals.

In addition to your solicitation of Company employees, we are aware that just days after your resignation with the Company, you directly solicited a customer of the Company. You are therefore in direct violation of the Agreement which must cease immediately. See Panther Sys. II, Ltd. v. Panther Computer Sys., Inc., 783 F. Supp. 53, 57 (E.D.N.Y. 1991) (enjoining defendant from soliciting plaintiff's customers).

While the Company has informed us that you returned some Confidential Information (as defined in the Agreement) to it subsequent to the termination of your employment, you are hereby once more reminded of this requirement and the Company demands that you return any additional Confidential Information immediately and sign a sworn statement to that effect.

Indeed, given the fact you have already reached out to at least one customer of the Company to solicit that customer's business, it is evident that you are refusing to act in good faith and intend on using the Company's confidential and proprietary information, which was inappropriately misappropriated following your resignation. Based on the foregoing, we must take reasonable steps to identify and preserve potentially relevant information, including both hard copy documents and electronically stored information (ESI), that is in your possession, custody, or control.

Because we will file a lawsuit against you should you fail to comply with these demands, we expect that you will maintain all information that is or may be relevant to the action, such as the foregoing information outlined in the immediately preceding paragraph. We have also reasonably and partially identified in detail below the potentially relevant information that you maintain (the "subject information").

As putative defendants, and given the fact that you possess, have custody of, or control of the subject information, we must make reasonable efforts to preserve this information. Accordingly, we demand that you preserve the subject information in the manner described herein. Because we anticipate that the subject information may be helpful to our claims or defenses in this litigation or dispute, we demand that Matthew Forman, Christina Cappello, Jacob Forman, Joseph Forman, and Flip a Coin preserve it in the manner described herein.

**Potentially Relevant Information**

We therefore demand that you take reasonable steps to preserve the following information that you are required to preserve in connection with any such anticipated litigation:

      (a)    All documents and records concerning customers of the Company;

      (b)    All electronic devices and accounts wherein you maintain information concerning customers of the Company;

      (c)    All documents and records of communications, via email, text, or otherwise, with customers of the Company;

      (d)    All documents and records of communications, via email, text, or otherwise, with employees of the Company, including – but not limited to – Matthew Forman, Christina Cappello and Jacob Forman;

      (e)    All documents and records of communications, via email, text, or otherwise, with vendors and customers of the Company; and

      (f)    All documents and records of any kind and all related information concerning and detailing the subject information.

If you anticipate that additional information in your possession, custody, or control may also be relevant to the litigation, we demand that you take all immediate steps necessary to preserve it. When preserving ESI, we demand that you take all necessary steps to ensure that the ESI is preserved intact and without modification. For example, consider whether preservation requires you to:

      (a)    Suspend related data destruction and backup tape recycling policies.

      (b)    Retain software, hardware, or other information required to access or view the ESI, such as:

            (i)     identification codes;
            (ii)    passwords;
            (iii)   decryption applications;
            (iv)   decompression software;
            (v)    reconstruction software;

(vi)     network access codes;
(vii)    manuals; and
(viii)   user instructions.

(c)      Take special action for:

(i)      archived or deleted ESI;
(ii)     ESI stored in a database;
(iii)    computer logs; and
(iv)     metadata, including the date ESI was created, the date ESI was last modified, and the name of the individual who created the ESI, and any and all other data maintained on the Device.

Should you find the steps necessary to preserve the ESI unreasonable or overly burdensome, please take any immediate steps necessary to preserve it and promptly contact us to evaluate options for mitigating the burden.  If any of the subject information is in another individual or entity's possession, custody, or control, we demand that you identify all such individuals and entities and that you take any available reasonable steps to secure the information's preservation and contact us to discuss how we may work with you to secure the other individual or entity's cooperation.

Your failure to preserve the subject information may expose you to sanctions for spoliation of evidence, which would have serious consequences in a court of law. We therefore demand that you develop and implement a reasonable plan to preserve the subject information for the foreseeable future and throughout the duration of the litigation we anticipate we will be forced to bring against you.

Dated: Lake Success, New York
           August 17, 2023                      Guide yourself accordingly,

                                                **MILMAN LABUDA LAW GROUP PLLC**

                                                _____/s/  Kyle F. Monaghan, Esq._____
                                                Emanuel Kataev, Esq.
                                                Kyle F. Monaghan, Esq.
                                                3000 Marcus Avenue, Suite 3W8
                                                Lake Success, NY 11042-1073
                                                (516) 328-8899 (office)
                                                (516) 328-0082 (facsimile)
                                                emanuel@mllaborlaw.com
                                                kyle@mllaborlaw.com

                                                *Attorneys for Bullion Shark, LLC*

cc: Bullion Shark, LLC

4

# EMPLOYMENT AGREEMENT

Agreement dated 1/11-              , 2022    between Bullion Shark, LLC, a New York state

limited liability company, maintaining a principal office for the transaction of business at 1 Old

Country Road, Suite 106, Carle Place, New York 11514 (hereinafter called the EMPLOYER"),

and  Matt Forman              , (hereinafter called the "EMPLOYEE"), residing at

100 west Broadway, Apt 6HH, Long Beach NY, 11561                              .

## W I T N E S S E T H:

WHEREAS, the EMPLOYEE seeks to commence employment hereunder with the

EMPLOYER as a salesperson; and

WHEREAS, the EMPLOYER and the EMPLOYEE wish to set down in writing the terms

and conditions of such employment with the EMPLOYER.

NOW, THEREFORE, in mutual consideration of the Agreement herein, the parties agree

as follows:

1.      Employment.  The EMPLOYER hereby agrees to employ the EMPLOYEE as a

Salesperson, and the EMPLOYEE hereby accepts such employment upon the terms and conditions

hereinafter set forth.  EMPLOYEE shall begin employment hereunder as of the date set forth

above.

2.      Term.  The term of this Employment Agreement ("Agreement") shall be "At

Will."  As an at will employee, his services may be terminated by the Employer at any time for

any reason (provided it is not a reason prohibited by statute) or no reason at all.  Similarly,

EMPLOYEE may terminate his services to EMPLOYER for any reason or no reason at all.

EMPLOYEE, however, must give 14 days' notice before ceasing his work activities on behalf of EMPLOYER.

3.  <u>Compensation</u>.  For all services rendered by the EMPLOYEE under this Agreement, the EMPLOYER shall pay the EMPLOYEE, $15 per hour ("base wage"). In addition to this hourly wage, EMPLOYEE shall receive a commission based on their paid in full bi-weekly gross sales less sales tax & returns of one percent (1%) if sales are less than $10,000, two percent (2%) if sales are greater than $10,000, four percent (4%) if sales are greater than $15,000, five percent (5%) if sales are greater than $20,000, six percent (6%) if sales are greater than $30,000, seven percent (7%) if sales are greater than $50,000 (base commission). This commission, if earned, shall be paid bi-weekly. Commission paid for prior sales that are returned will be deducted from the next payroll. Gross sales less sales tax, shall be determined in accordance with generally accepted accounting principles ("GAAP"). Upon written request, EMPLOYER shall furnish EMPLOYEE a statement of earnings paid or due and unpaid.

EMPLOYEE'S hourly wage shall be paid in accordance with the EMPLOYER'S typical payroll policies on a bi-weekly basis, provided that if the period of employment hereunder shall terminate prior to the completion of a payroll period, then the wages payable for said period shall be prorated.

4.  <u>Duties</u>.  The EMPLOYEE will be employed as a salesperson with all customary and typical responsibilities of such a position within the industry.  The EMPLOYEE will report to Nicholas and/or Andrew Adamo.  The precise services of the EMPLOYEE may be extended or curtailed, from time to time, at the direction of the EMPLOYER.  EMPLOYEE'S essential duties

and responsibilities include, but are not limited to, the following: promotion and sales of rare coins and precious metals.

5.   Expenses. EMPLOYEE shall be reimbursed for all items reasonably paid for by EMPLOYEE on behalf of EMPLOYER, if prior approval was obtained for the expense. EMPLOYEE must submit receipts for all such charged items within thirty (30) days of incurring such expenses together with an itemized list of the nature, date incurred, recipient, purpose and amount of all expenses.  Prior approval of EMPLOYEE'S supervisor must be obtained or reimbursement may not be possible.  No such expenses are currently anticipated.

6.   Vacation Days. The EMPLOYEE will not be entitled to paid holidays/vacation/personal days.

7.   Disclosure of information. The EMPLOYEE recognizes and acknowledges that the list of the EMPLOYER'S suppliers and customers, customer sales histories and the EMPLOYER'S pricing and cost data, the Employer's analytical business data and business strategies and operations (collectively referred to hereinafter as "confidential information,"), as they may exist from time to time (to the extent that they were not known to the EMPLOYEE prior to her employment with EMPLOYER), are valuable, special, and unique assets of the EMPLOYER'S business.  The EMPLOYEE acknowledges that the EMPLOYER has made sizeable expenditures of time and money in developing this data and makes all reasonable efforts to protect their secrecy.  The EMPLOYEE acknowledges that said data constitute trade secrets of the EMPLOYER and the EMPLOYEE will not during the term of his employment or thereafter, directly or indirectly, use, divulge, furnish or make accessible to anyone other than the EMPLOYER, its affiliates or subsidiaries, any confidential information, (whether existing or under development).

4851-6373-0905, v. 3

8.   <u>Restrictive Covenant</u>.  At the termination of EMPLOYEE'S employment, for whatever reason, the EMPLOYEE agrees that for two (2) years after this employment with EMPLOYER terminates, EMPLOYEE will not: (a) solicit any customer of EMPLOYER to do business with any other entity in the same or similar type of business.  A customer of EMPLOYER is defined throughout this Employment Agreement as any entity that has availed it/him/herself of EMPLOYER'S goods or services within the twelve (12) months prior to EMPLOYEE'S separation from employment with EMPLOYER; (b) request or advise any of the past, present and/or expected customers, and/or suppliers of the EMPLOYER, to withdraw, curtail or cancel its business relationship with the EMPLOYER; or (c) induce, or attempt to influence any employee, agent, independent contractor, or sales representative of the EMPLOYER to terminate his, her or its employment and/or working business relationship with the EMPLOYER.  EMPLOYEE agrees that regardless of the above restrictions, EMPLOYEE will still be able to earn a living within this industry.

The EMPLOYEE further agrees that he/she shall not, after the termination of the performance of services by her on behalf of the EMPLOYER, take with him any books, reports, letters, memoranda or documents whatsoever, or copies thereof which reflect or deal with any of the foregoing confidential and trade secret information, including but not limited to any information concerning the names, addresses, telephone numbers and email addresses of the EMPLOYER'S principals, customers, suppliers, employees or any part thereof to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever.  This includes any format or platform that may include such data, including but not limited to digital, video, etc.

In the event of a breach or threatened breach by the EMPLOYEE of the provisions of this or the immediately preceding numbered paragraph, the EMPLOYER shall be entitled to a

4851-6373-0905, v. 3

preliminary and a permanent injunction, enforcing said provisions.  No undertaking or bond shall be required for any injunctive relief described above and EMPLOYER shall be entitled to recover the expenses it incurs in enforcing the provisions of paragraphs 7 and 8 hereof, including, but not limited to, reasonable attorney's fees.

Nothing herein shall be construed as prohibiting the EMPLOYER from pursuing any other remedies available to the EMPLOYER for such breach or threatened breach, including the recovery of damages from the EMPLOYEE.

9.    <u>Resignation</u>.   Should EMPLOYEE choose to resign from employment with EMPLOYER, he/she must provide a minimum of two (2) weeks' notice of said desire to EMPLOYER.

10.    <u>Death Or Disability During Employment</u>.  If the EMPLOYEE dies during the term of his/her employment or becomes unable to perform his/her essential duties (despite reasonable accommodation) due to mental or physical defect or disease, for one hundred twenty-one (121) consecutive days, this Agreement shall terminate.  Upon such termination, the EMPLOYER shall pay to the EMPLOYEE or his/her estate the annual salary which would otherwise be payable to the EMPLOYEE up to the end of the month in which his/her death or disability occurs and the EMPLOYER shall have no further obligations hereunder.  Notwithstanding the above, should the EMPLOYEE become unable to perform his/her essential duties (despite reasonable accommodation) due to mental or physical defect or disease, the parties will consult with a mutually selected physician and determine whether any reasonable duration of leave will permit EMPLOYEE to return to his duties.  If not, then this Agreement shall be deemed terminated as if EMPLOYEE died.

4851-6373-0905, v. 3

11.    Notices.  Any and all notices provided herein shall be given in writing by first class mail, FedEx or certified mail, return receipt requested, which shall be addressed, in the case of the EMPLOYER, to the EMPLOYER'S President at the EMPLOYER'S above stated address and in the case of the EMPLOYEE, to the address stated above.

12.    Representation.  EMPLOYEE represents that he/she is unencumbered in entering into this Agreement and employment with EMPLOYER.  EMPLOYEE represents that he/she is free from any contractual restrictions, express or implied, with respect to any prior employer. Should this representation prove inaccurate, that shall constitute grounds for immediate termination.

13.    Construction.  Whenever used in this Agreement, the singular word shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.  This Agreement shall not be interpreted in favor of, or against, either party on account of such party having drafted this Agreement.  The titles and captions in this Agreement are for convenience of reference only and shall not control or affect the interpretation or construction of any of its terms or conditions.

14.    Applicable Law; Jurisdiction.  This Agreement shall be subject to and governed by the laws of the State New York.  All disputes in connection with this Agreement or the subject matter hereof shall be resolved in either the State Courts located in Nassau County, New York or the United States District Court for the Eastern District of New York, and EMPLOYER and EMPLOYEE each submit to the exclusive jurisdiction of such courts.

15.    Savings.  If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement, or the applications of such term or provisions to persons or circumstances other

4851-6373-0905, v. 3

than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law. Similarly, either party's waiver of the other's obligation on one occasion will not waive the same obligation in the future.

16.    <u>Entire Agreement</u>.  This Agreement contains the Parties' entire Agreement, and there are no Agreements or representations, which are not set forth herein.  All prior negotiations, Agreements, and understandings of the parties are superseded by this Agreement.  No modification of this Agreement shall be valid unless the modification is in writing and signed by both the EMPLOYEE and the EMPLOYER.

17.    <u>Independent Covenants</u>.  Each covenant, condition, representation and promise set forth herein is separate, distinct and independent of any other covenant, condition, representation or promise contained herein.  No covenant, condition, representation or promise contained herein is, in any way, contingent upon any other covenant, condition, representation or promise contained herein.

18.    <u>Waiver</u>.  The decision by EMPLOYER to refrain from enforcing EMPLOYEE'S breach of any provision of this Employment Agreement, shall not prohibit EMPLOYER from subsequently enforcing that very breach.  The waiver by either party of a breach of any provision of this Agreement by the other shall not operate or be construed as a waiver of any subsequent breach.  In addition the failure by either party to insist upon strict compliance with any of the terms, covenants, or conditions, hereof shall not be deemed a waiver of such term, covenant, or condition, nor shall any waiver or relinquishment by either party of any right or power hereunder at any one time or more times be deemed a waiver or relinquishment of such right or power by the said party at any other time or times.

7

19.   <u>Non-Disparagement</u>. EMPLOYEE agrees that he/she will not disparage EMPLOYER to anyone during his/her employment with EMPLOYER and for three (3) years thereafter.

20.   <u>Jury Trial</u>.  Each of EMPLOYER and EMPLOYEE irrevocably agrees to waive their respective rights to a jury trial of any claim or cause of action based upon or arising out of this Employment Agreement and any dealings between them relating to this Employment Agreement and the relationship hereby established.

Bullion Shark, LLC

By:_____
       Nicholas Adamo,  Managing Member


EMPLOYEE

_____
Matthew Forman

# EMPLOYMENT AGREEMENT

Agreement dated February    , 28     between Bullion Shark, LLC, a New York state limited liability company, maintaining a principal office for the transaction of business at 1 Old Country Road, Suite 106, Carle Place, NY 11514 (hereinafter called the EMPLOYER"), and

christina cappello          (hereinafter called the "EMPLOYEE"), residing at

349 lake avenue deer park NY

## WITNESSETH:

WHEREAS, the EMPLOYEE seeks to commence employment hereunder with the EMPLOYER as a Administrative Assistant; and

WHEREAS, the EMPLOYER and the EMPLOYEE wish to set down in writing the terms and conditions of such employment with the EMPLOYER.

NOW, THEREFORE, in mutual consideration of the Agreement herein, the parties agree as follows:

1. <u>Employment</u>.  The EMPLOYER hereby agrees to employ the EMPLOYEE as a Administrative Assistant, and the EMPLOYEE hereby accepts such employment upon the terms and conditions hereinafter set forth.  EMPLOYEE shall begin employment hereunder as of the date set forth above.

2. <u>Term</u>.  The term of this Employment Agreement ("Agreement") shall be "At Will."  As an at will employee, her services may be terminated by the Employer at any time for any reason (provided it is not a reason prohibited by statute) or no reason at all.  Similarly, EMPLOYEE may terminate her services to EMPLOYER for any reason or no reason at all. EMPLOYEE, however, must give 14 days' notice before ceasing her work activities on behalf of EMPLOYER.

3. <u>Wages</u>. For all services rendered by the EMPLOYEE under this Agreement, the EMPLOYER shall pay the EMPLOYEE, 21.64 per hour. EMPLOYEE shall be paid in accordance with the EMPLOYER'S typical payroll policies on a bi-weekly basis, provided that if the period of employment hereunder shall terminate prior to the completion of a payroll period, then the wages payable for said period shall be prorated.

4. <u>Duties</u>. The EMPLOYEE will be employed as an Administrative Assistant for the EMPLOYER with all customary and typical responsibilities of such a position within the industry. The EMPLOYEE will report to Nicholas Adamo and/or Andrew Adamo. The precise services of the EMPLOYEE may be extended or curtailed, from time to time, at the direction of the EMPLOYER. EMPLOYEE'S essential duties and responsibilities include, but are not limited to, the following: processing credit card payments & refunds, applying payments to customer accounts, generating sales tax reports, answering telephones, responding to customer service emails, and other clerical work, etc.

5. <u>Expenses</u>. EMPLOYEE shall be reimbursed for all items reasonably paid for by EMPLOYEE on behalf of EMPLOYER with prior approval from a supervisor. EMPLOYEE must submit receipts for all such charged items within thirty (30) days of incurring such expenses together with an itemized list of the nature, date incurred, recipient, purpose and amount of all expenses. Emergent conditions could require additional expenses to be incurred on behalf of EMPLOYER for which EMPLOYEE will be reimbursed, however, prior approval of EMPLOYEE'S supervisor must be obtained.

6. <u>Vacation Days</u>. The EMPLOYEE will be entitled to the following paid holidays/vacation/personal days: one (1) week per year (which equals five (5) workdays). Payment shall be based solely upon the EMPLOYEE'S hourly wages. Vacation for this year shall

be calculated based upon a beginning work date of January , 8 . Should EMPLOYEE separate from employment with EMPLOYER before having used all vacation days, those unused days shall be forfeited.

7. <u>Disclosure of information</u>. The EMPLOYEE recognizes and acknowledges that the list of the EMPLOYER'S suppliers and customers, customer sales histories and the EMPLOYER'S pricing and cost data (collectively referred to hereinafter as "confidential information," as they may exist from time to time (to the extent that they were not known to the EMPLOYEE prior to her employment with EMPLOYER), are valuable, special, and unique assets of the EMPLOYER'S business. The EMPLOYEE acknowledges that the EMPLOYER has made sizeable expenditures of time and money in developing this data and makes all reasonable efforts to protect their secrecy. The EMPLOYEE acknowledges that said data constitute trade secrets of the EMPLOYER and the EMPLOYEE will not during the term of his employment or thereafter, directly or indirectly, use, divulge, furnish or make accessible to anyone other than the EMPLOYER, its affiliates or subsidiaries, any confidential information, (whether existing or under development).

8. <u>Restrictive Covenant</u>. At the termination of EMPLOYEE'S employment, for whatever reason, the EMPLOYEE agrees that for two (2) years after her employment with EMPLOYER terminates, EMPLOYEE will not (a) solicit any customer of EMPLOYER to do business with any other entity. A customer of EMPLOYER is defined throughout this Employment Agreement as any entity that has availed it/him/herself of EMPLOYER'S goods or services within the twelve (12) months prior to EMPLOYEE'S separation from employment with EMPLOYER; (b) request or advise any of the past, present and/or expected customers, and/or suppliers of the EMPLOYER, to withdraw, curtail or cancel its business relationship with the

3

EMPLOYER; or (c) induce, or attempt to influence any employee, agent, independent contractor, or sales representative of the EMPLOYER to terminate his, her or its employment and/or working business relationship with the EMPLOYER. EMPLOYEE agrees that regardless of the above restrictions, EMPLOYEE will still be able to earn a living within this industry.

The EMPLOYEE further agrees that she shall not, after the termination of the performance of services by her on behalf of the EMPLOYER, take with her any books, reports, letters, memoranda or documents whatsoever, or copies thereof which reflect or deal with any of the foregoing confidential and trade secret information, including but not limited to any information concerning the names, addresses and telephone numbers of the EMPLOYER'S principals, customers, suppliers, employees or any part thereof to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever.

In the event of a breach or threatened breach by the EMPLOYEE of the provisions of this or the immediately preceding numbered paragraph, the EMPLOYER shall be entitled to a preliminary and a permanent injunction, enforcing said provisions. No undertaking or bond shall be required for any injunctive relief described above and EMPLOYER shall be entitled to recover the expenses it incurs in enforcing the provisions of paragraphs 7 and 8 hereof, including, but not limited to, reasonable attorney's fees.

Nothing herein shall be construed as prohibiting the EMPLOYER from pursuing any other remedies available to the EMPLOYER for such breach or threatened breach, including the recovery of damages from the EMPLOYEE.

9.  Resignation.  Should EMPLOYEE choose to resign from employment with EMPLOYER, he/she must provide a minimum of two (2) weeks' notice of said desire to EMPLOYER.

4835-9330-1215, v. 1

10. <u>Death Or Disability During Employment</u>. If the EMPLOYEE dies during the term of her employment or becomes unable to perform her essential duties (despite reasonable accommodation) due to mental or physical defect or disease, for one hundred twenty-one (121) consecutive days, this Agreement shall terminate. Upon such termination, the EMPLOYER shall pay to the EMPLOYEE or his/her estate the annual salary which would otherwise be payable to the EMPLOYEE up to the end of the month in which his death or disability occurs and the EMPLOYER shall have no further obligations hereunder. Notwithstanding the above, should the EMPLOYEE become unable to perform her essential duties (despite reasonable accommodation) due to mental or physical defect or disease, the parties will consult with a mutually selected physician and determine whether any reasonable duration of leave will permit EMPLOYEE to return to his duties. If not, then this Agreement shall be deemed terminated as if EMPLOYEE died.

11. <u>Notices.</u> Any and all notices provided herein shall be given in writing by first class mail, FedEx or certified mail, return receipt requested, which shall be addressed, in the case of the EMPLOYER, to the EMPLOYER'S President at the EMPLOYER'S above stated address and in the case of the EMPLOYEE, to the address stated above.

12. <u>Representation</u>. EMPLOYEE represents that she is unencumbered in entering into this Agreement and employment with EMPLOYER. EMPLOYEE represents that she is free from any contractual restrictions, express or implied, with respect to any prior employer. Should this representation prove inaccurate, that shall constitute grounds for immediate termination.

13. <u>Construction</u>. Whenever used in this Agreement, the singular word shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders. This Agreement shall not be interpreted in favor of, or against, either party on account of such party

having drafted this Agreement. The titles and captions in this Agreement are for convenience of reference only and shall not control or affect the interpretation or construction of any of its terms or conditions.

14.     Applicable Law; Jurisdiction. This Agreement shall be subject to and governed by the laws of the State New York. All disputes in connection with this Agreement or the subject matter hereof shall be resolved in either the State Courts located in Nassau County, New York or the United States District Court for the Eastern District of New York, and EMPLOYER and EMPLOYEE each submit to the exclusive jurisdiction of such courts.

15.     Savings. If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement, or the applications of such term or provisions to persons or circumstances other than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law. Similarly, either party's waiver of the other's obligation on one occasion will not waive the same obligation in the future.

16.     Entire Agreement. This Agreement contains the Parties' entire Agreement, and there are no Agreements or representations, which are not set forth herein. All prior negotiations, Agreements, and understandings of the parties are superseded by this Agreement. No modification of this Agreement shall be valid unless the modification is in writing and signed by both the EMPLOYEE and the EMPLOYER.

17.     Independent Covenants. Each covenant, condition, representation and promise set forth herein is separate, distinct and independent of any other covenant, condition, representation or promise contained herein. No covenant, condition, representation or promise contained herein

6

is, in any way, contingent upon any other covenant, condition, representation or promise contained herein.

18.  Waiver.  The decision by EMPLOYER to refrain from enforcing EMPLOYEE'S breach of any provision of this Employment Agreement, shall not prohibit EMPLOYER from subsequently enforcing that very breach.  The waiver by either party of a breach of any provision of this Agreement by the other shall not operate or be construed as a waiver of any subsequent breach.  In addition the failure by either party to insist upon strict compliance with any of the terms, covenants, or conditions, hereof shall not be deemed a waiver of such term, covenant, or condition, nor shall any waiver or relinquishment by either party of any right or power hereunder at any one time or more times be deemed a waiver or relinquishment of such right or power by the said party at any other time or times.

19.  Non-Disparagement. EMPLOYEE agrees that she will not disparage EMPLOYER to anyone during her employment with EMPLOYER and for one (1) year thereafter.

20.  Jury Trial.  Each of EMPLOYER and EMPLOYEE irrevocably agrees to waive its respective rights to a jury trial of any claim or cause of action based upon or arising out of this

Agreement and any dealings between them relating to this Agreement and the relationship hereby established.

Bullion Shark, LLC

By: _Nicholas Adamo_____

Nicholas Adamo,  Managing Member

EMPLOYEE

4835-9330-1215, v. 1

christina cappello