# MILMAN LABUDA LAW GROUP PLLC

**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**

———

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

December 22, 2023

**Author: Kyle F. Monaghan - Associate**
**Direct E-Mail Address: kyle@mllaborlaw.com**
**Direct Dial: (516) 303-1361**

<u>**VIA ECF**</u>
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Nusrat J. Choudhury, U.S.D.J.
100 Federal Plaza, Courtroom 1040
Central Islip, New York 11722

      *Re:*   <u>**Bullion Shark, LLC v. Flip a Coin Bullion LLC,** *et al.*</u>
             <u>**Case No.: 2:23-cv-6529 (NJC) (ARL)**</u>

Dear Judge Choudhury:

      This firm represents Plaintiff Bullion Shark, LLC ("Plaintiff" or "Bullion Shark") in the above-referenced case. Plaintiff writes to respectfully seek reconsideration of this Court's Order dated December 6, 2023[1] (hereinafter the "Order") and provide the following relief: granting a temporary restraining order against Defendants prohibiting them from contacting any of Plaintiff's qualified leads and existing customers list, as well as Plaintiff's employees and vendors, pending the preliminary injunction hearing set for January 23, 2024.

      A motion for reconsideration[2] may be granted where the moving party shows that the court overlooked controlling law or facts that, had they been considered, would have altered the disposition of the underlying motion. <u>See</u> <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration may also be "granted to correct clear error, *prevent manifest injustice*, or review the court's decision in light of *the availability of new evidence*." <u>See</u> <u>Mendez-Caton v. Carribean Family Health Center</u>, 340 F.R.D. 60, 74 (E.D.N.Y. Jan. 28, 2022) (Merkl, J.) (emphasis added) (<u>citing</u> <u>Parrish v. Sollecito</u>, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

---

[1] <u>See</u> ECF Docket Entry <u>42</u>.

[2] Plaintiff respectfully requests leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by Local Civil Rule 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), which requires that the Rules be construed, administered, and <u>employed</u> by <u>the</u> <u>court</u> and the parties to secure the <u>just</u>, <u>speedy</u>, and <u>inexpensive</u> determination of every action and proceeding. <u>See</u> Fed. R. Civ. P. 1 (emphasis added). Due to the emergency nature of the relief requested, Plaintiff respectfully submits that this Court should grant leave to file the instant motion as a letter motion rather than a formal motion.

In the Order, this Court found that Plaintiff was unlikely to show irreparable harm based upon the loss of its trade secrets because Plaintiff's loss of sales and client relationships to Defendant Flip a Coin Bullion LLC ("Flip a Coin") can be calculated and compensated through monetary damages. See ECF Docket Entry 42 (citing Faively Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 119 (2d Cir. 2009) (quoting Giritrex Corp. v. Dermarite Indus., LLC, 910 F. Supp. 955, 966 (S.D.N.Y. 1996)). However, the Second Circuit has held that the loss of trade secrets, alone, constitutes irreparable harm irrespective of the availability of compensatory damages.[3] See N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir. 1999) (holding "loss of trade secrets cannot be measured in money damages" because "[a] trade secret once lost is, of course, lost forever") (quoting FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984)); see also DermSource, Inc. v. CityMedRx, LLC, 2023 U.S. Dist. LEXIS 8652, *8 (E.D.N.Y. Jan 18, 2023) (Seybert, J.) (finding that plaintiff established irreparable harm based upon the defendants' solicitation of plaintiff's customers using plaintiff's trade secrets and confidential information).

In other words, where there exists a loss of trade secrets, as is the case here, irreparable harm is established irrespective of whether the resultant loss of customers may be quantifiable in the form of monetary damages for lost profits. This is because it is "very difficult to precisely quantify the harm caused by having … trade secrets misappropriated and used to jump-start a new competitor." See QBE Americas, Inc. v. Allen, No. 22-CIV.-756 (JSR), 2022 WL 889838, at *15 (S.D.N.Y. Mar. 25, 2022). In this case, Plaintiff indicated in its moving papers that at least three (3) customers contained in its master list of qualified leads and existing customers (which master list was deemed a trade secret by this Court) were contacted by the Defendants,[4] but the Court found that there is an issue of fact as to whether those customers were obtained by Defendants through independent means, i.e., a purchased lead list. However, Plaintiff thereafter purchased the same leads list that Defendants claim to be the legitimate source for these three (3) customers, and their names do not appear on this list. See Declaration of Nicholas Adamo ("Adamo Decl."), Exhibits ("Exs.") "D" and "E." Further, Plaintiff has established that Defendants had access to their qualified leads and existing customers lists, giving rise to the inference that they misappropriated same. Emboldened by the denial of Plaintiff's request for a temporary restraining Order, Defendants have put the pedal to the floor in continuing to unlawfully solicit leads from Plaintiff's confidential list in violation of the restrictive covenant agreements they signed.[5]

---

[3] This Court found that Plaintiff is likely to show that its master list of qualified leads and customer information is a trade secret. See ECF Docket Entry 42 at 11-13.

[4] See ECF Docket Entry 42 at p. 12-13 ("Here, the record shows that Bullion Shark created its master list of existing customers and qualified leads through paid advertising, participating in trade shows, and maintaining a website; Plaintiff took reasonable measures to keep the list a secret; and that the list has independent economic value by giving Plaintiff an advantage of its competitors. See Adamo Decl. ¶¶ 8, 21-27, 33. Accordingly, the Court finds that Plaintiff's master list is likely a trade secret").

[5] Defendants denied signing these agreements, but the uncontroverted evidence establishes that each of the individual Defendants, except Joseph Forman (who was never an employee), signed. See ECF Docket Entries 18-1, 18-2, and 18-3; see also Adamo Decl., Exs. "A", "B," and "C."

As such, Plaintiff has sufficiently established irreparable harm because without a temporary restraining order from the Court, Defendants will continue to unlawfully solicit Plaintiff's qualified leads and existing customers, for which Plaintiff will be unable to quantify its losses. See QBE Am., Inc., 2022 WL 889838, at *15 ("Even if QBE could reliably measure and obtain damages for poached customers at the end of this litigation, it would be very difficult to precisely quantify the harm caused by having its trade secrets misappropriated and used to jump-start a new competitor").

To that end, *since* the hearing for the temporary restraining order on November 30, 2023, Plaintiff has uncovered even more of its existing customers and qualified leads that are being contacted by Defendants, despite Defendants having no prior interaction with these qualified leads or existing customers while Defendants Matthew Forman ("Matthew"), Christina Cappello ("Cappello") and Jacob Forman ("Jacob") were employed by Plaintiff.

Specifically, Plaintiff is aware that Defendants have contacted John Lafalgio ("Lafalgio"), John McCrory ("McCrory"), Paul Shuliga ("Shuliga"), Damon Rosenaur ("Rosenaur"), Michael Perrault ("Perrault"), Mark Luke ("Luke"), Lawerence Bova ("Bova"), Barry Noble ("Noble"), and William Baker ("Baker") since Plaintiff filed its Order to show cause. See Declaration of Aaron Harouche (hereinafter "Harouche Decl.") ¶¶ 8-48.

To make matters worse, one of Plaintiff's employees, Aaron Harouche ("Harouche"), was informed by Lafalgio that Defendants have stated that they will beat any price that Plaintiff quotes for any item.[6] Without access to Plaintiff's list of qualified leads and customers, Defendants would never have had access to Lafalgio or any other customer of Plaintiff's. Regrettably, each day that Defendants are permitted to contact Plaintiff's qualified leads and existing customers without recourse further harms Plaintiff such that it is unable to determine the extent to which those qualified leads and existing customers that have been solicited. Accordingly, absent the issuance of a temporary restraining Order, Plaintiff will continue to suffer irreparable harm.

Moreover, Messrs. McCrory and Alvey have both raised concerns that Plaintiff leaked their contact information to Defendants as they had not had any prior contact with Defendants who called them "out of the blue." See Harouche Decl. ¶¶ 18, 38, 42-43 (expressing concerns about doing any further business with Bullion Shark). As such, due to Defendants' misappropriation of Plaintiff's trade secrets, Bullion Shark's reputation among its customers is being irreparably harmed, providing another ground for this Court to find that Plaintiff will be irreparably harmed if Defendants are not ordered to cease using Plaintiff's misappropriated trade secrets. See, e.g., Intl. Profit Assoc., Inc. v Paisola, 461 F. Supp. 2d 672, 679-80 (N.D. Ill. 2006) ("I do find that IPA has no adequate legal remedy as to this demonstrated defamation, and that the damages of this defamation, *including reputational losses and potential confusion by its customers and employees, are incalculable such that IPA has no adequate legal remedy*") (emphasis added). Here, irreparable harm also exists based on the apparent confusion caused from Defendants' contacting Plaintiff's customers "out of the blue," causing discord between Plaintiff and its customers.

---

[6] This Court is permitted to consider hearsay on such an application. See Mullins v. City of New York, 626 F.3d 47 (2d Cir. 2010); see also Zeneca, Inc. v. Eli Lilly Corp., 1999 WL 509471 (S.D.N.Y. 1999) (citing cases).

Furthermore, this Court found that there was a triable issue of fact regarding whether Matthew, Cappello and Jacob had signed their respective employment agreements, which contained restrictive covenants prohibiting them from utilizing Plaintiff's trade secrets to solicit its customers, employees, and vendors for a period of two (2) years following their separation from employment. In opposition, Matthew, Cappello, and Jacob submitted an unsworn, electronically signed letter in opposition to argue that they are not familiar with signing employment agreements and that the signatures contained in the employment agreements are not theirs. These unsworn statements should not have been considered absent some indication that they were made based upon their personal knowledge. See Ong v. Park Manor (Middletown Park) Rehabilitation and Healthcare Center, No. 12-CIV.-974, 2017 WL 4326540, at *6 (S.D.N.Y. Sept. 28, 2017) (court considered unsworn statements in plaintiff's memorandum of law to the extent they were made on personal knowledge or were supported by other admissible evidence); see also Shepherd v. Fischer, No. 10-CIV.-1524, 2015 WL 1246049, at *8 n.22 (N.D.N.Y. Feb. 23, 2015) ("Although the allegations are contained in plaintiff's unsworn memorandum of law in support of his opposition, courts in this circuit routinely consider such statements in connection with a motion for summary judgment where the proponent of the statements is a *pro se* litigant, mindful of the duty to extend special solicitude to those individuals"), report and recommendation adopted, 2015 WL 1275298 (N.D.N.Y. March 18, 2015); Hamm v. Hatcher, No. 05-Civ.-503, 2013 WL 71770, at *7 (S.D.N.Y. Jan. 7, 2013) (considering unsworn statements in *pro se* plaintiff's memorandum of law, but "only to the extent that they [were] based on personal knowledge or supported by other admissible evidence in the record").

Here, there was an insufficient basis to conclude that Defendants' unsworn letter was based upon their personal knowledge, especially in light of Defendants' representation that they "are not familiar with signing the non compete." See ECF Docket Entry 20 at p. 3 ¶ 1. However, setting that aside, this unsworn statement should have been swiftly disregarded with respect to Matthew and Cappello as each of their employment agreements contained a "SignNow E-Signature Audit Log," which showed the person, date, time and Internet Protocol ("IP") Address each time their respective employment agreements were accessed. See ECF Docket Entries 18-1 at p. 10 and 18-2 at p. 10. Specifically, on January 11, 2022, mattf@bullionsharks.com viewed and signed Matthew's employment agreement and on February 28, 2022, christinac@bullionsharks.com viewed and signed Cappello's employment agreement. Id. This alone should have been sufficient to show that Matthew's and Cappello's unsworn statement that they did not sign their respective agreements was false. In any event, Plaintiff respectfully submits newly acquired evidence, which establishes that Matthew and Cappello had access to and exchanged email communications from and to their respective email accounts on dates in close proximity to the dates that they each viewed and signed their agreements. See Adamo Decl. ¶¶ 8, 12, Exs. "A" and "B." As such, Plaintiff respectfully requests that this Court reconsider its Order to the extent it found there is an issue of fact concerning whether Defendants signed their employment agreements.

As to Jacob's employment agreement, he physically signed the agreement. Despite Defendants' unsworn statement to the contrary, Plaintiff respectfully submits other documentation signed by Jacob which contains a virtually identical signature to the one contained in his employment agreement. See Adamo Decl. ¶ 18, Exhibit ("Ex.") "C." Accordingly, Plaintiff respectfully requests that this Court reconsider whether Jacob signed his employment agreement that contained restrictive covenants.

4

Next, as alluded to above, Defendants' argument that they purchased the names and contact information for Harry Boltz ("Boltz"), Guy Foote ("Foote"), and Mark Joslyn ("Joslyn") from SalesLeads.TV is demonstrably false. After reviewing Defendants' unsworn assertion that they legitimately obtained the contact information for Boltz, Foote and Joslyn from SalesLeads.TV ("Sales Leads"), Plaintiff contacted Sales Leads to ascertain the veracity of Defendants' claim. Plaintiff requested and purchased the exact same list that Sales Leads sold to Defendants in order to verify this assertion. See Adamo Decl. ¶ 28, Ex. "E".[7] Importantly, and fatal to Defendants' unsworn arguments, is that the contact information for Boltz, Foote, and Joslyn is *not* contained in the Sales Leads lists that Defendants obtained. Even more troubling, the contact information for Lafalgio, McCrory, Shuliga, Rosenaur, Perrault, Luke, Bova, Noble and Baker are similarly not contained in the Sales Leads list.

As such, Defendants' argument that it obtained the contact information for Plaintiff's qualified leads and existing customers from publicly available information is demonstrably false. Because Defendants have failed to assert any other basis for how they obtained the contact information for the growing list of Plaintiff's qualified leads and existing customers that Defendants misappropriated, Plaintiff has sufficiently shown that it is likely to succeed on the merits of its claim for violation of the Defendant Trade Secrets Act ("DTSA") such that this Court should reconsider its original determination that Plaintiff is not entitled to a temporary restraining Order. See Medidata Solutions, Inc. v. Veeva Sys., 2018 U.S. Dist. LEXIS 199763, *8 (S.D.N.Y. Nov. 26, 2018) ("To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret" and a defendant misappropriates a trade secret under the DTSA (1) when it acquires a trade secret by improper means, or (2) discloses or uses the trade secret without consent").

Here, Defendants are in possession of Plaintiff's trade secrets (*i.e.*, its qualified leads list and existing customer list) and have provided no valid defense as to how they legitimately obtained these trade secrets. Moreover, Defendants are currently using Plaintiff's trade secrets to solicit business away from Plaintiff in violation of federal law and the restrictive covenants contained in Matthew's, Cappello's and Jacob's respective employment agreements.

To be clear, Plaintiff does not seek reconsideration of this Court's Order denying Plaintiff's Order to show cause to enjoin Defendants from operating their business, but Plaintiff does seek an Order enjoining Defendants from contacting any of Plaintiff's qualified leads and existing customers list, as well as Plaintiff's employees and vendors, pending the preliminary injunction hearing set for January 23, 2024.

In addition, not only is Defendants' misappropriation causing irreparable harm to Plaintiff, it is also causing irreparable harm to Plaintiff's employees, whose compensation includes commissions made from sales to Plaintiff's qualified leads and existing customers. As those sales are inevitably lessened due to Defendants' illegal conduct, Plaintiff's employees are damaged by their inability to make sales that are being subverted away from Plaintiff and its employees.

---

[7] Defendants purchased the list for $3,000 in total, and Plaintiff similarly purchased the same list for $3,000. See ECF Docket Entry 20; see also Adamo Decl., ¶ 27, Exhibit "D".

Plaintiff therefore respectfully requests reconsideration of this Court's Order as follows: granting a temporary restraining order against Defendants prohibiting them from contacting any of Plaintiff's qualified leads and existing customers list pending the preliminary injunction hearing set for January 23, 2024. The requested relief will maintain the *status quo* and protect Plaintiff's trade secrets from further dissemination.

Plaintiff and its employees thank this Court for its continued time and attention to this case.

Dated: Lake Success, New York
      December 22, 2023                    Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

    */s Kyle F. Monaghan, Esq.*
Emanuel Kataev, Esq.
Kyle F. Monaghan, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com
kyle@mllaborlaw.com

*Attorneys for Plaintiff*
*Bullion Shark, LLC*