# LAW OFFICES OF
# TODD WENGROVSKY, PLLC.
**285 Southfield Road, Box 585**
**Calverton, New York 11933**
**Tel (631) 727-3400**
**Fax (631) 727-3401**
contact@twlegal.com


<u>via ECF</u>                                                December 29, 2023

Hon. Judge Nusrat J. Choudhury
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722                    <u>Re: Bullion Shark, LLC v. Flip a Coin</u>
                                           <u>Bullion LLC, et. al.,</u>
                                           <u>(EDNY 23-CV-6529)</u>

Dear Judge Choudhury:

My office represents Defendants in the above-referenced action. Upon the attached Declaration of Christina Cappello (hereinafter "Cappello Decl."), this is submitted in opposition to Plaintiff's Motion for Reconsideration regarding the Court's denial of Plaintiff's Motion for Temporary Restraining Order.

We would like to note, in the first instance, that Plaintiff apparently filed a letter motion, rather than a formal motion, without Court approval. Defendants object to this deviation from the Local Rules and Individual Rules.

As for the merits of Plaintiff's motion, Plaintiff's argument is essentially that the Court "overlooked" important things in denying Plaintiff's Motion for Temporary Restraining Order. It is Defendants' position that the Court's approach was comprehensive, meticulous, and legally correct. As such, Plaintiff's Motion for Reconsideration should be denied in its entirety.

As previously discussed, Plaintiff basically seeks a restraining order against Defendants contacting Plaintiff's customers, leads, and vendors. However, it is respectfully submitted that there is no protectable interest for a list of *vendors* under applicable law, thus this analysis will instead focus on customers and leads. Indeed, suppliers / vendors are public knowledge and they come up in ordinary Google searches. (Cappello Decl. Par. 6, 7).

Plaintiff would have this Court think that the *only* place where Defendants could have found prospective customers is from the Plaintiff, or from a particular list of leads that Defendants had purchased from a third party, "SalesLeads.TV." This is untrue - the reality is that there are <u>many</u> ways Defendants can find prospective customers. (Cappello Decl. Par. 2).

Hon. Judge Nusrat J. Choudhury
December 29, 2023
Page 2 of 5

Moreover, upon information and belief, customers in the coin industry are known to each buy from multiple companies.  In other words, it would be unusual for a customer in this field to buy from the Plaintiff *only*, or from the Defendant *only*. The market for this type of business is extremely small; the customers are getting contacted every day by multiple vendors. Whether a customer chooses to do business with one company or another is up to them. (Cappello Decl. Par. 15).

Plaintiff argues that they spent over one million dollars in advertising and that their "master list" has over 7,000 leads, yet they only claim to have heard back from the few people they identified in their Motion, who represent less than one percent of the master list.  Defendants have not even had sales from those few people.  If Defendants had *actually* stolen Plaintiff's master list, after being in business for four months, Defendants would have far more clients.  Simple math and common sense show that Defendants did <u>not</u> take Plaintiff's master list. (Cappello Decl. Par. 13, 14).

Still, the following is an analysis of applicable case law. As discussed in *FMC Corp. v. Taiwan Tainan Giant Indus. Co*., 730 F.2d 61, 63 (2d Cir. 1984), customer lists are trade secrets <u>only</u> if the names on the list are not "readily ascertainable" from sources outside an employer's business. *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 393-95, 328 N.Y.S.2d 423, 427-29, 278 N.E.2d 636, 639-41 (1972).  Here, it has yet to be determined whether or not this is the case. Therefore, Plaintiff has not shown enough to overturn this Court's ruling denying a Temporary Restraining Order.

Next, in arguing that irreparable harm is somehow *inherent* under the circumstances, Plaintiff relies on *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984).  However, *FMC Corp*. involved specific technology, namely the formulation of carbofuran, an agricultural insecticide.  Some of the underlying subject matter in *FMC Corp.* was actually patented.  This is far different from a business that buys and sells coins, as in the present case.  Though the *FMC Corp*. Court may have intimated that once a trade secret is lost it is lost forever, the context was wildly different than the present case and hardly applicable here.

Plaintiff also relies on *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999).  However, in *North Atlantic Instruments*, the Court's determination was after an eight-day evidentiary hearing.  In addition, in *North Atlantic Instruments*, the target customers at issue were incredibly specialized.  As stated by the Court, "That is, there may be only two engineers — within a company comprised of 20,000 engineers and 100,000 employees — who might need the technology..."  Furthermore, in *North Atlantic Instruments*, there was a clear employment contract that literally called for an injunction, and literally specified that the usage of the materials would be irreparable harm.  As stated by the *North Atlantic Instruments* Court:

> "Haber acknowledged in his Employment Agreement that a breach of the confidentiality clause would cause "irreparable injury" to North Atlantic. *Cf. Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (relying on a similar clause in determining irreparable injury for purposes of upholding a grant of injunctive relief)."

Hon. Judge Nusrat J. Choudhury
December 29, 2023
Page 3 of 5

The same was true in another case relied on by Plaintiff, *QBE Americas, Inc. v. Allen*, No. 22-CIV.-756 (JSR), 2022 WL 889838, at \*15 (S.D.N.Y. Mar. 25, 2022) ("Allen and Dekker's employment contracts agree that a breach of the relevant restrictive covenants would constitute irreparable harm").

To the contrary, in the present case, there is considerable doubt as to the validity of any employment contract, let alone a clear agreement between the parties that usage of the information at issue <u>would be irreparable harm</u>.

The final case cited by Plaintiff regarding irreparable harm is *DermSource, Inc. v. CityMedRx, LLC*, 2023 U.S. Dist. LEXIS 8652, \*8 (E.D.N.Y. Jan 18, 2023). However, in *DermSource*, unlike here, the former employee allegedly hacked into the plaintiff's camera system at the behest of the defendants to illegally record and intercept the plaintiff's internal communications, including audio and video. Such is obviously a <u>severe</u> infraction (that is quite possibly criminal), representing a drastic departure from the ordinary and benign circumstances of the present case.

Plaintiff also now claims that "confusion" has been caused by Defendants contacting prospective customers, arguing that such persons may not have known where Defendants got their contact information. This can not help Plaintiff's Motion for Reconsideration because the *interests of prospective customers* does nothing to change the Court's determination that <u>any potential damages to Plaintiff are quantifiable</u>. Stated simply, if there was no irreparable harm last week or last month, this new minor point will not cure that defect. Here, Plaintiff is relying on a case from Illinois, *Intl. Profit Assoc., Inc. v. Paisola*, 461 F. Supp. 2d 672, 679-80 (N.D. Ill. 2006). However, Plaintiff **<u>truncated</u>** the quote from the *Intl. Profit Assoc.* case in its Motion. The quote, in its proper context, is as follows:

> "I find that the only instance of defamation against which defendants may be enjoined at this stage of the litigation is defendants' <u>false representation that IPA offered to settle with Paisola, and that as part of this settlement IPA agreed to pay Paisola and to allow Paisola to participate in the management of the company</u>. I do find that IPA has no adequate legal remedy as to this demonstrated defamation, and that the damages of this defamation, including reputational losses and potential confusion by its customers and employees, are incalculable such that IPA has no adequate legal remedy. I further find that a TRO prohibiting defendants from continuing to publish this false statement is not against the public interest, and that any incidental harm to defendants in prohibiting further publication would be far outweighed by the damage to IPA of its continued publication" (emphasis added)

It is clear from the above *full* quote that the *Intl. Profit Assoc.* Court was referring <u>only</u> to a highly-specific, very damaging factual misrepresentation when mentioning "reputational losses" and "confusion by its customers." In fact, the defamatory statement at issue in *Intl. Profit Assoc.* left the customers – and even the employees – in doubt as to *who was even managing the company*.

Hon. Judge Nusrat J. Choudhury
December 29, 2023
Page 4 of 5

To say that there is no analogous defamation in the present case would be a huge understatement. Here, Plaintiff points only to vague, hearsay statements from alleged customers (who Plaintiff illegally recorded) to allege that Defendants recommended that the prospective customers buy from Defendants instead of Plaintiff. Whether the Court is allowed to consider such hearsay in this Motion or not, the value of the alleged statements cited by Plaintiff is minimized, as the statements are completely unverified.

Regardless, the Court knew all of the above when it denied the Motion for Temporary Restraining Order, and Plaintiff's misplaced District Court holding from Illinois does nothing to render this Court's decision incorrect.

In sum, the cases cited by Plaintiff regarding irreparable harm are simply not analogous to the present case. This Court, after a lengthy hearing and highly-detailed submissions, ruled that there was no irreparable harm. Stated simply, Plaintiff has not shown nearly enough to overturn this Court's ruling denying the Temporary Restraining Order.

With regard to employment agreements, Joseph Forman was never employed by Plaintiff, therefore he could not have violated any agreement. Jacob Forman was a minor when he began his employment with Plaintiff, and there is therefore an issue for trial as to the validity of any agreement he may have signed. (Cappello Decl. Par. 12). The validity of any agreements relative to Matthew Forman and Christina Cappello is disputed, thus this issue should also be examined in an evidentiary hearing later. (Cappello Decl. Par. 8, 9, 10, 11). Therefore, Plaintiff's argument is not nearly enough to overturn this Court's denial of the Motion for Temporary Restraining Order.

Plaintiff then argues that the Court erred in considering Defendants' unsworn statements. It is respectfully suggested that the Court is quite familiar with the evidentiary rules and does not need coaching from any attorney. Regardless, it is quite obvious that Defendants' statements were based on their own knowledge and therefore worthy of consideration. In fact, it is only logical for some deference to be given to the fact that Defendants were acting *pro se* at the time and simply did not know to use certain "magic" legal language to confirm the same.

Plaintiff also argues - for the first time - that Defendants have damaged Plaintiff's *individual employees* by reducing such persons' potential commissions. However, Defendants have no sales at all from John Lafalgio, James Mccory, Michael Perrault, Paul Shuliga, Matthew Alvey, or Mark Luke, as alleged by Plaintiff. Therefore, if representatives of Bullion Shark were losing commissions and sales from those individuals, that would have nothing to do with Defendants. (Cappello Decl. Par. 3, 4, 5). Regardless, such individual employees are not parties to this case, and there is no mention of this in the Complaint. As such, Plaintiff's argument with regard to their individual employees should be disregarded by the Court, and the Motion for Reconsideration should be denied.

Hon. Judge Nusrat J. Choudhury
December 29, 2023
Page 5 of 5


Finally, it is worth noting that Plaintiff's secret purchase of Defendants' exact, identical list of leads from SalesLeads.TV is highly troubling. (Cappello Decl. Par. 17). Plaintiff could have instead obtained this information through discovery, which would have allowed defense counsel the opportunity to designate such commercially-sensitive information as "Attorneys' Eyes Only." Though Defendants would be well within their right to file a Counterclaim against Plaintiff for this unfair competition, Defendants strongly prefer to settle this case without further complicating the litigation.

Respectfully submitted,

/s/ Todd Wengrovsky

Todd Wengrovsky
*Counsel for Defendants*

cc: Emanuel Kataev, Esq.,
*Counsel for Plaintiff,* via ECF