**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
BULLION SHARK, LLC.,

                        Plaintiff,                **DECLARATION OF
CHRISTINA CAPPELLO
IN SUPPORT OF
OPPOSITION TO**

              -against-                         **MOTION FOR
RECONSIDERATION**

                                                     Index No. 23-CV-6529

FLIP A COIN BULLION LLC, MATTHEW
FORMAN, CHRISTINA CAPPELLO, JACOB
FORMAN and JOSEPH FORMAN,

                        Defendants.
-------------------------------------------------------------------X

       CHRISTINA CAPPELLO, duly sworn, deposes and says, under the penalty of perjury:

       1. I am one of the individual Defendants in this case, and I am familiar with the pleadings and proceedings previously made in this case. This Declaration is submitted in support of Defendants' Opposition to Plaintiff's Motion for Reconsideration of this Court's denial of Plaintiff's Motion for Temporary Restraining Order.

       2. We have multiple sources where we buy leads from. In this litigation, we have only provided one company that we buy leads from, as an example only. The Plaintiff Bullion Shark, LLC. now has a portion of our leads, and representatives of Bullion Shark are calling our clients. We have heard from a few of our clients that representatives of Bullion Shark are defaming us in these communications.

3. We have no sales at all from James Mccory, Michael Perrault, Paul Shuliga, Matthew Alvey, or Mark Luke. If representatives of Bullion Shark were losing commissions and sales from those individuals, that would have nothing to do with us.

4. We have no sales from John Lafalgio. His name might have came up on a lead list, but any conversation with him would have been short because once someone tells us they work with a different company, we respect their decision and end the conversation.

5. Representatives of Bullion Shark are clearly manipulating John Lafagio, as shown in the vulgar text messages provided by Bullion Shark.

6. Bullion Shark claims that I copied supplier contact information prior to leaving my employment. This statement is untrue.

7. Suppliers / vendors are public knowledge and they come up in ordinary Google searches.

8. In paragraph 9 of the Declaration of Nicholas Adamo, he states that he reached out to Matthew Forman and asked him to review and sign the agreement. This is untrue.

9. In paragraph 10 of the Declaration of Nicholas Adamo, he states that Bullion Shark would not have keep Matthew Forman as an employee if he did not sign the employment agreement. This is untrue. Bullion Shark kept Matthew Forman because he was bringing in a lot of money as one of the top sales representatives.

10. In paragraph 11 of the Declaration of Nicholas Adamo, he states that Matthew Forman signed an employment agreement. In paragraph 15 of the Declaration of Nicholas Adamo, he states that I signed an employment agreement.

11. Neither Matthew Forman nor I were never explained thoroughly what a non-compete is, or what was in any employee agreement, and we do not recall signing anything.

12. Jacob Forman was 16 years old and a junior in high school at the time he began employment with Bullion Shark. Jacob Forman was never informed of what a non-compete was, nor was he aware of having to sign anything. Because he was a minor, any papers should have been sent home to his father Joseph Forman.

13. If we had actually stolen Bullion Shark's master list of clients, we would have much more business right now.

14. Bullion Shark says that they spent over one million dollars in advertising and that their master list has over 7,000 leads, yet they only claim to have heard back from the few people they identified in their Motion, who represent less than one percent of the master list. We have not even had sales from those few people. If we had actually stolen Bullion Shark's master list, after being in business for four months, we would have far more clients. Simple math and common sense shows that we did not take Bullion Shark's master list.

15. The market for our type of business is extremely small; the customers are getting contacted every day by multiple other vendors. Whether a customer chooses to do business with us or another company is up to them.

16. John from SalesLeads.TV has even told us he resells the exact lead lists to multiple companies, so we and Bullion Shark are bound to come in contact with a few mutual people.

17. Bullion Shark is claiming that we stole their leads, but Bullion Shark has made it extremely clear that they asked John Fischer from SalesLeads.TV for our exact lead list. When we first bought our lead list from Fischer months ago, Fischer represented to us that he does not resell his leads, and that is why we chose to do business with him. However, Nicholas Adamo of Bullion Shark, having an apparent past relationship with Fischer, manipulated Fischer by paying him for our exact lead list. Adamo manipulated Fischer into doing something unethical, which Bullion Shark has done multiple times in the past. Representatives of Bullion Shark are now calling our leads, and we have been told that representatives of Bullion Shark are defaming us. We have tried to come up with a solution in the past to cross-reference all customers of both companies to avoid this, but Bullion Shark has refused to cooperate.

x *Christina Cappello*
CHRISTINA CAPPELLO

on behalf of Defendants