UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Bullion Shark, LLC,<br><br>                         Plaintiff,<br><br>         -v-<br><br>Flip A Coin LLC, et al.,<br><br>                         Defendants. | 2:23-cv-6529<br>(NJC) (ARL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Before the Court is a Letter Motion by Plaintiff Bullion Shark, LLC ("Bullion Shark") for Reconsideration of this Court's November 30, 2023 Order denying Plaintiff's Motion for a Temporary Restraining Order ("TRO"). Pl.'s Letter Mot. Recons., ECF Nos. 46–48. For the reasons stated below, the Court denies Bullion Shark's Letter Motion for Reconsideration.

**BACKGROUND**

On August 31, 2023, Bullion Shark filed a Complaint for damages and injunctive relief against Defendants Flip A Coin, LLC ("Flip A Coin"), Matthew Forman, Christina Cappello, Jacob Forman, and Joseph Forman (collectively, "Individual Defendants") to stop them from allegedly stealing confidential information and trade secrets concerning Plaintiff's potential and current customers and the pricing of its products—rare coins and precious metals. Compl., ECF No. 1. The Complaint brings claims for violation of: (1) the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"); (2) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

("CFAA"); and New York common law protections against (3) trade secret misappropriation, (4) unfair competition, (5) tortious interference with contractual relations, business relations, and prospective economic advantage, (6) unjust enrichment, (7) breach of contract, (8) conversion, (9) violation of the faithless servant doctrine, (10) breach of duty of loyalty, and (11) breach of fiduciary duty. Compl. ¶ 1.

On November 17, 2023, Bullion Shark filed a Motion for Temporary Restraining Order and Preliminary Injunction requesting eleven forms of temporary and/or preliminary injunctive relief. ECF Nos. 15–18. At the time, the Individual Defendants were proceeding *pro se* and Flip A Coin had not yet retained counsel. The Court held hearings on Bullion Shark's TRO Motion on November 28, 2023 and November 30, 2023. Min. Entry, Nov. 28, 2023; Min. Entry, Nov. 30, 2023. At the November 30, 2023 hearing, the Court denied Bullion Shark's TRO Motion, set a briefing schedule on Bullion Shark's Preliminary Injunction Motion, scheduled an evidentiary hearing on that motion for January 23, 2024, and ordered the parties to engage in mediation. Min. Entry, Nov. 30, 2023.

The Court provided its reasons for denying the TRO on the record at the November 30, 2023 hearing. The Court found that, based on the record at that early stage of the proceedings, Bullion Shark failed to demonstrate irreparable harm or raise serious questions on the merits of its claims and that the balance of hardships tips in its favor. *See* Elec. Order, Nov. 30, 2023; *see also* Mem. Order Dec. 6, 2023, ECF No. 42. The Court noted that although Bullion Shark was likely to establish that its master list of existing customers and qualified leads was a trade secret under the DTSA and New York common law, Plaintiff failed to show that Defendants' alleged outreach to people on this list was not compensable by money damages. *See Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 119 (2d Cir. 2009) (loss of trade secrets and client

2

relationships does not establish irreparable harm absent a showing that there is an imminent risk of dissemination of trade secrets and that plaintiff's injuries are not compensable through an award of damages). This Court also identified material factual questions precluding a finding that Defendants were likely to succeed on, or raise serious questions about, their claims under the DTSA, New York common law protection against trade secret misappropriation, and the CFAA. *See* Elec. Order, Nov. 30, 2023. Finally, the Court noted that Bullion Shark had not raised serious questions on the merits concerning the eight additional claims pled in the Complaint, which Bullion Shark did not adequately address in its briefing. *See* Mem. Order at 17–18. Accordingly, the Court denied Bullion Shark's request for a TRO and deferred ruling on the request for a preliminary injunction pending the January 23, 2024 evidentiary hearing. *See generally* Mem. Order. On December 6, 2023, the Court memorialized its findings and reasoning in a written opinion to aid the parties as they engaged in mediation and prepared for the hearing on the Preliminary Injunction Motion. *See id.*

Following the November 30, 2023 hearing, all Defendants filed an Answer. ECF No. 41. On December 11, 2023, Magistrate Judge Lindsay held an in-person settlement conference, which did not lead to settlement of any of Plaintiff's claims. Min. Entry, Dec. 12, 2023, ECF No. 43.

On December 18, 2023, the parties filed a report pursuant to Rule 26(f), Fed. R. Civ. P., in which Bullion Shark indicated its intention to file a motion for reconsideration of this Court's Order denying Bullion Shark's Motion for a TRO. *See* ECF No. 45 at 3. Bullion Shark filed its Letter Motion for Reconsideration and supporting declarations and exhibits on December 22, 2023. ECF Nos. 46–48. Defendants filed a letter and supporting declaration in opposition on December 29, 2023. Defs.' Opp'n, ECF Nos. 49–50.

3

## MOTION FOR RECONSIDERATION

Bullion Shark moves the Court for reconsideration of three parts of the Court's ruling denying its TRO Motion and seeks an Order enjoining Defendants from contacting any of Plaintiff's qualified leads and existing customers as well as Plaintiff's employees and vendors, pending the January 23, 2024 preliminary injunction hearing. *See* Pl.'s Letter Mot. Recons. at 6.

First, Bullion Shark asks the Court to reconsider its finding that Plaintiff did not show irreparable harm. Plaintiff argues that under *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999), it was not required to show that the loss of its trade secrets was not compensable by money damages. *See* Pl.'s Letter Mot. Recons. at 2 (citing *Haber*, 188 F.3d at 49 (quoting *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984)). Bullion Shark also points to new evidence of irreparable harm by submitting a new declaration from one of its employees who attests that nine customers told him they were contacted by Defendants following this Court's denial of the TRO Motion and that two customers expressed concern that Bullion Shark had leaked their contact information to Defendants. *See id*. at 3. According to this employee, one customer expressed skepticism of doing further business with Bullion Shark "because he no longer trusted that Bullion Shark was protecting is [sic] contact information." Harouche Decl. ¶ 42, ECF No. 48.

Second, Bullion Shark moves the Court to reconsider its finding that there is an issue of fact as to whether Defendants Matthew Forman, Jacob Forman, and Christina Cappella signed their respective employment agreements, arguing the Court should not have considered these Defendants' unsworn statement indicating they did not sign the agreements. *See* Pl.'s Letter Mot. Recons. at 4. Bullion Shark points the Court to electronic activity logs concerning the agreements. *Id.*; *see also* ECF Nos. 18-1 and 18-2. Plaintiff also submits what it characterizes as

4

"newly acquired evidence" establishing that Defendants Matthew Forman and Cappello had access to their Bullion Shark emails around the dates they purportedly signed employment agreements and verifying Defendant Jacob Forman's signature. *See* Pl.'s Letter Mot. Recons. at 4; Adamo Decl., ECF No. 47 ¶¶ 8, 12, 18.

Third, Bullion Shark moves the Court to reconsider its ultimate finding that Plaintiff is not entitled to a TRO by asking for consideration of new evidence that allegedly undercuts Defendants' position that they solicited Harry Boltz, Guy Foote, and Mark Joslyn based on publicly available information and not by misappropriating Bullion Shark's master list of existing customers and qualified leads. *See* Pl.'s Letter Mot. Recons. at 5; Adamo Decl. ¶ 28. Bullion Shark contends that it "purchased the exact same list that Sales Leads sold to Defendants" and that because this list does not include contact information for Boltz, Foote, and Joslyn, Defendants necessarily misappropriated Bullion Shark's confidential list of qualified leads and existing customers. Pl.'s Letter Mot. Recons. at 5.

In response, Defendants argue that this Court did not err in denying a TRO because Bullion Shark has failed to show both that Defendants misappropriated the master list and that Bullion Shark's alleged loss is not quantifiable by money damages. Defendants assert that contrary to Bullion Shark's focus on Defendants' purchase of leads from "SalesLeads.TV," "the reality is that there are many ways Defendants can find prospective customers," and that "customers are getting contacted every day by multiple vendors." Defs.' Opp'n at 1–2. Defendants also argue that any "confusion" on the part of Plaintiff's prospective customers regarding where Defendants got their contact information "does nothing to change the Court's determination that any potential damages to Plaintiff are quantifiable." Defs.' Opp'n at 3. Additionally, Defendants argue that Bullion Shark's new evidence includes "hearsay statements

5

from alleged customers" the value of which is "minimized, as the statements are completely unverified." Defs.' Opp'n at 4. Defendants assert that they "have no sales at all" from six of the nine customers that Bullion Shark identified as solicited by Defendants following this Court's denial of Bullion Shark's TRO Motion, and "[t]herefore, if representatives of Bullion Shark were losing commissions and sales from those individuals, that would have nothing to do with Defendants." Defs' Opp'n at 4.

Additionally, Defendants distinguish *Haber* on the basis that the demonstration of irreparable harm in that case was made after an eight-day evidentiary hearing, that the target customers were "incredibly specialized," and that "there was a clear employment contract that literally called for an injunction, and literally specified that the usage of materials would be irreparable harm." *Id*. at 2.

Regarding the alleged employment agreements, Defendants point out that Defendant Joseph Forman could not have violated any agreement because he was never employed by Bullion Shark and that Defendant Jacob Forman was a minor when he started working for Bullion Shark, which raises "an issue for trial as to the validity of any agreement he may have signed." Defs.' Opp'n at 4. Defendants further argue that the validity of Defendant Matthew Forman and Defendant Cappello's agreements is disputed and "should also be examined in an evidentiary hearing later." Defs.' Opp'n at 4.

Defendants also note that Bullion Shark raises a new theory on the Motion for Reconsideration: that Defendants have allegedly harmed Bullion Shark's individual employees by reducing their commissions. *See* Defs.' Opp'n at 4; Pl.'s Letter Mot. Recons. at 5. Defendants further observe that on this Letter Motion for Reconsideration, Bullion Shark requests a TRO that prohibits Defendants from contacting not only Bullion Shark's qualified leads and existing

customers, but also its "vendors." *See* Defs.' Opp'n at 1; Pl.'s Letter Mot. Recons. at 5. Defendants argue that the inclusion of "vendors" is misplaced because "there is no protectable interest for a list of *vendors* under applicable law." Defs.' Opp'n at 1.

Finally, Defendants raise the concern that Bullion Shark obtained Defendants' client list from Sales Leads TV and published it with the Motion for Reconsideration, rather than obtaining this information in discovery and permitting defense counsel to seek appropriate protection for such sensitive commercial information. *See* Defs.' Opp'n at 5. Defendants note that it "would be well within their right to file a Counterclaim against Plaintiff" for unfair competition, but that they "strongly prefer to settle this case without further complicating the litigation." *Id*.

## STANDARD OF REVIEW

The standard for granting a motion for reconsideration is "strict." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . ." *Id*. (internal quotation marks and citation omitted). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). A party's "disagreement" with the Court's "explication of the relevant legal standards and application of the standards to the facts of [the] case" does not

7

justify the grant of a motion for reconsideration. *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. 2018). The "manifest injustice" standard affords the district court substantial discretion and is rarely met. *See Chitkara v. N.Y. Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002).

## DISCUSSION

The Court has reviewed Bullion Shark's Letter Motion, the Declaration of Nicholas Adamo and attached exhibits, the Declaration of Aaron Harouche and attached exhibits, Defendants' letter in opposition, and the Declaration of Christina Cappello. ECF Nos. 46–50. For the following reasons, the Court denies Bullion Shark's Letter Motion for Reconsideration.

First, Plaintiff's counsel filed two declarations in support of the Letter Motion for Reconsideration in violation of this Court's rule governing the filing of motions for reconsideration. *See* Local Civil Rule 6.3 ("No affidavits shall be filed by any party unless directed by the Court."). The bulk of Bullion Shark's arguments depends on factual assertions supported only by the newly-filed Adamo or Harouche Declarations or their supporting exhibits, none of which were before the Court when it considered the TRO Motion during the November 28, 2023 and November 30, 2023 hearings. Indeed, Plaintiff's counsel's inclusion of these submissions and Bullion Shark's heavy reliance on them shows that the Letter Motion for Reconsideration is an attempt to relitigate the factual basis for the motion that this Court denied. Bullion Shark's attempt to relitigate the facts—particularly ahead of the January 23, 2024 preliminary injunction hearing—is improper on a motion for reconsideration, which is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.*, 684 F.3d at

52. Consequently, this Court declines to consider the declarations and exhibits that Plaintiff's counsel submitted without the direction of the Court and in violation of Local Civil Rule 6.3. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.") (internal brackets and citation omitted).[1] For the same reasons, the Court declines to consider the Cappello Declaration submitted by Defendants.

Second, Bullion Shark has not satisfied the substantive standard for granting a motion for reconsideration. Plaintiff fails to show any legal error or "intervening change of controlling law" that would warrant a grant of the motion. As noted, Bullion Shark relies on text from the Second Circuit's decision in *FMC Corporation.*, 730 F.2d 61, as quoted in *Haber*, 188 F.3d 38, to argue that the loss of trade secrets establishes irreparable harm "irrespective of whether the resultant loss of customers may be quantifiable in the form of monetary damages for lost profits." Pl.'s Letter Mot. Recons. at 2. As a threshold matter, this Court found numerous questions of fact in the record on the TRO motion concerning whether Bullion Shark in fact "lost" any trade secrets due to Defendants' misappropriation. *See* Mem. Order at 14–15. Moreover, *Haber* and *FMC Corporation* do not present any "intervening change of controlling law," and there is no "clear

---

[1] Notably, Bullion Shark has also failed to abide by Local Civil Rule 6.3's requirement that a motion for reconsideration be accompanied by a notice of motion and memorandum of law. Bullion Shark requested permission to proceed via letter motion "due to the emergency nature of the relief requested." Pl.'s Letter Mot. Recons. at 1 n.2. But Plaintiff has not explained why it could not abide by Local Civil Rule 6.3 when the Court granted it additional time to file its motion for reconsideration, which was due fourteen (14) days "after the entry of the Court's determination of the original motion." Local Civil Rule 6.3. Bullion Shark's motion was therefore due on December 14, 2023—fourteen days after this Court's oral ruling—or at the latest by December 20, 2023—fourteen days after this Court's December 6, 2023 written order. Nevertheless, this Court provided Bullion Shark until December 22, 2023 to file its motion for reconsideration, and Bullion Shark chose to file its motion for reconsideration on that date in a form that violates this Court's rule. *See* Elec. Order, Dec. 19, 2023

error" in the Court's reading of controlling Second Circuit precedent on what is required to show irreparable harm in the trade secrets context. *Kolel*, 729 F.3d at 104. The Court's order denying Plaintiff's TRO Motion cites the Second Circuit's 2009 decision in *Faiveley*, which explicitly addresses the language from *FMC Corporation* on which Plaintiff relies and directly disposes of Bullion Shark's argument:

> We have previously observed that "the loss of trade secrets cannot be measured in money damages" where that secret, once lost, is "lost forever." *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir.1984) (*per curiam*). Some courts in this Circuit have read this passing observation to mean that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. . . . **That reading is not correct**. A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets. **Where a misappropriator seeks only to use those secrets**—without further dissemination or irreparable impairment of value—**in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury**. Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge. As Judge Conner has observed, **where there is no danger that a misappropriator will disseminate proprietary information, "the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product . . . [which] should be fully compensable by money damages**."

*Faiveley Transp. Malmo AB*, 559 F.3d at 118–19 (emphasis supplied) (citation omitted). Notably, this Court found that the record on the TRO Motion raised numerous questions of fact concerning whether Defendants had disclosed any confidential or trade secret information without authorization in an attempt to sell their goods. *See* Mem. Order at 9–10, 14–15. The Court certainly did not find that Bullion Shark had proven that Defendants sought to "disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." *Faiveley*, 559 F.3d at 118. Bullion Shark's arguments concerning *Haber* and *FMC Corporation* thus fail to meet the strict standard applied to a motion to reconsideration and,

10

again, boil down to an attempt to rehash arguments that this Court rejected in its denial of the TRO Motion.

Third, Bullion Shark's argument that there is no question of fact regarding whether Defendants Matthew Forman, Jacob Forman, and Cappello signed their employment agreements also does not meet the high threshold of reconsideration "to correct a clear error." *Kolel*, 729 F.3d at 104. Bullion Shark contends that the Court should not have considered these Defendants' unsworn statement that they did not sign employment agreements with Bullion Shark that contained provisions concerning the non-disclosure of certain information—a statement made while these Defendants were proceeding *pro se*. *See* Pl.'s Letter Mot. Recons. at 4; Indiv. Defs.' Opp'n to TRO, ECF No. 20. As Bullion Shark's own authority states, "courts in this circuit routinely consider [unsworn] statements . . . where the proponent of the statements is a *pro se* litigant, mindful of the duty to extend special solicitude to those individuals." *Shepherd v. Fischer*, No. 9:10-CV-1524 TJM/DEP, 2015 WL 1246049, at *8 n.22 (N.D.N.Y. Feb. 23, 2015) *report and recommendation adopted*, No. 9:10-CV-1524, 2015 WL 1275298 (N.D.N.Y. March 18, 2015) (citation omitted); *see also Wilton Reassurance Life Co. of New York v. Smith*, 2015 WL 631973, at *10 (E.D.N.Y. Feb. 13, 2015) (the court, in its discretion, would consider the *pro se* defendant's unsworn statements "to the extent they were not conclusory or otherwise inappropriate for consideration.") (citations omitted). The Court committed no "clear error" in considering the statement of then-*pro se* Defendants Matthew Forman, Jacob Forman, and Cappello that they did not sign employment agreements to conclude there was a question of fact as to this issue. Mem. Order Dec. 6, 2023 at 13–14.

## CONCLUSION

For the reasons set forth above, the Court denies Bullion Shark's Letter Motion for Reconsideration.

Dated: Central Islip, New York
January 2, 2024

                                                   /s Nusrat J. Choudhury
                                                      NUSRAT J. CHOUDHURY
                                                      United States District Judge